370 So.2d 231 (1979)
William H. MORGAN
v.
STATE of Mississippi.
No. 50967.
Supreme Court of Mississippi.
April 11, 1979.
Rehearing Denied May 16, 1979.
Terry L. Jordan, Thomas L. Booker, Jr., Philadelphia, for appellant.
A.F. Summer, Atty. Gen., by Susan L. Runnels, Special Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
WALKER, Justice, for the Court:
This is an appeal from the Circuit Court of Neshoba County, Mississippi, wherein William H. Morgan was convicted of aggravated assault on a fireman. From that conviction and sentence of fifteen years in the custody of the Department of Corrections, he prosecutes this appeal. We reverse.
We would first point out that the evidence in this case as to criminal intent was extremely close and has given this Court much concern. Moreover, there is a serious question concerning the verdict itself. When the jury returned its verdict into open court, the jurors were polled and the following exchange took place between the court and Prentiss Boone, one of the jurors:
COURT: Is this your verdict? Yes.
BOONE: I guess so... . I did not want to be the one to hang the jury.

*232 COURT: Do not say anything else. Is this your verdict?
BOONE: Yes.
The court accepted the verdict of "guilty" and discharged the jury. Subsequently, defendant filed his bill of exceptions to include the above exchange in the record and he made a motion for a mistrial and a motion for leave to inquire of the juror pertaining to his answer during the polling of the jury, both of which motions were overruled.
We are of the opinion that when the individual juror expressed a doubt as to whether he was voting his convictions in response to the instructions of the court or whether he was voting the way he did, contrary to his convictions, so as not to be unpopular with his fellow jurors, the judge should not have cut the juror off from expressing his feelings. The judge should have allowed the juror to express himself and then inquired whether the juror desired additional time in which to consult with his fellow jurors, or he could have declined to poll the jury further and returned the jury for further deliberation. In either event, additional instructions appropriate to the circumstances could be given if requested by the attorneys in writing or if deemed necessary by the court.
We are of the opinion that the questionable verdict in this case requires us to rule that no verdict either of acquittal or conviction was reached and that the case must be tried anew.
By our holding, we are not saying that a dialogue between the court and jury is to be encouraged except in those unusual circumstances such as the one presented in this case. Ordinarily, as little verbal exchange as possible initiated by the jurors is desirable.
For the foregoing reasons, the judgment of the lower court is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH, P.J., and SUGG, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C.J., and BOWLING, J., specially concur.
BROOM, J., and ROBERTSON, P.J., dissent.
BROOM, Justice, dissenting:
With deference and reluctance, I must express my feelings about this unusual case which the majority has voted to reverse on a matter usually left to the discretion of the trial judge.
In addition to the facts set out in the majority opinion, I think that there are other facts equally noteworthy. An altercation developed between Morgan and a fireman named Coleman as to whether Morgan should go into the "Sporthouse" which was on fire. Fireman Coleman testified that Morgan grabbed the fire chief's light and started to enter the building when Coleman told him, "Wait a minute . . let us go in there," whereupon Morgan became violent. Other testimony was that Morgan hit Coleman on the cheek with his fist and cursed him. According to the testimony, not only did Morgan then threaten to kill Coleman, but actually hit him with a pistol, necessitating Coleman's hospitalization for several days. Coleman's attending physician, Dr. Bondurant, testified that Coleman was lacerated on his forehead and his skull was fractured to some degree. Morgan's version was that he was trying to save his friend, one "Pieshot," whom Morgan thought was inside the burning building, and that Fireman Coleman was the aggressor in the affray. He admitted that he was armed with a Magnum pistol but denied using it.
Upon such conflicting testimony, the trial jury accepted the state's version and convicted Morgan, which I believe it had a right to do. The majority opinion seems to be based in part on the premise that the evidence "was extremely close." My careful study of the record indicates that the evidence at least preponderates in favor of the state, and, in any case, raised a classic jury question.
*233 The majority opinion quotes a dialogue between a juror and the court, which occurred when the court polled the jurors. Sitting as Monday morning quarterbacks, we at the appellate level may reflect that had we been presiding, we would have acted differently, but the actions of the trial court, in my judgment, did not rise to reversible proportions. The correct rule stated in 25 A.L.R.3d 1149, § 2[b] (1969), is that:
[C]ourts have generally held that any defect in a verdict which was given subject to a juror's conditional assent was cured where the juror, on further questioning, removed the condition and assented to the verdict.
That same authority, in § 4 at page 1157, states:
Where a juror answered "I reckon so" to the question whether the verdict of guilty was his, but on further questioning he stated that the verdict was the verdict of the jury and that he agreed to it, the court, affirming a conviction in Martin v. State (1929) 23 Ala.App. 281, 124 So. 392, cert. den. 220 Ala. 149, 124 So. 393, held that although the first answer was evasive, the trial judge was fully authorized to find that the verdict represented the juror's convictions.
In my view the real issue before this Court is: Did the trial judge manifestly abuse his discretion when confronted with the juror who indicated some concern about the verdict? In response to the last question of the court, the juror gave a positive, unequivocating, and unambiguous answer, "Yes," indicating that the guilty verdict was his verdict. Whatever reservation the juror initially had about the verdict, there was none indicated by the last words uttered by him. Yet the majority has held that the trial judge committed reversible error by not inquiring further as to the feelings of the juror. It escapes me how, on this record, it can be said that the trial judge abused his discretion in accepting the verdict of guilty.
There is another aspect of this case which I think should be discussed  it pertains to Morgan's request for a jury instruction on the presumption of innocence. The instruction requested by Morgan was faulty because it included language that the presumption of innocence "stands as a witness for the defendant, proclaiming to you throughout the trial ... that the defendant is wholly innocent ... and ... it is your sworn duty to listen to this witness... ." Instructions of this nature have been condemned by this Court a number of times and we cannot say that the trial court erroneously rejected it. Carr v. State, 192 Miss. 152, 4 So.2d 887 (1942).
According to the record, when the trial court rejected the presumption of innocence instruction, neither the defendant, the prosecution, nor the court offered or suggested a correctly worded instruction on the presumption. Had the defendant, Morgan, requested a proper instruction on the subject, it is very likely that the court would have granted it, or would have permitted him to modify the refused instruction. The question arises, whether or not, upon the facts presented in the instant case, it was the affirmative duty of the trial judge, though not requested, to give a correct instruction on the presumption of innocence. This situation was somewhat foreshadowed by Newell v. State, 308 So.2d 71 (Miss. 1975), where we held that the trial judge "shall not be put in error for his failure to instruct on any point of law unless specifically requested" to do so. The record in the instant case presents the anomalous situation in which a faulty instruction was actually requested (but rejected) and no correct instruction sought on the subject, resulting in the jury not being instructed on the presumption of innocence even though the court was requested to instruct on the subject.
It appears to me that we should speak to the question: What is the duty and responsibility of a trial judge when confronted with the dilemma created by failure of the prosecution and defense counsel to request a correct instruction on the presumption of innocence? Under our past practice, the trial judge could have rightly concluded (as *234 it appears he did) that he could not give an instruction on the presumption unless a correct instruction were requested in writing. Because such has been the practice and philosophy in past years, I would not reverse in this case for failure on the part of the trial judge (who followed past practice) to grant an instruction on the presumption of innocence. Nevertheless, I think it appropriate to call to the attention of trial judges and prosecutors that care should be taken in the future to see that jurors are properly instructed on the presumption of innocence.
The importance, status, and history of the presumption of innocence in American and English jurisprudence is cogently set forth in Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1894). Coffin states:
The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.
.....
Greenleaf traces this presumption to Deuteronomy, and quotes Mascardius De Probationibus to show that it was substantially embodied in the laws of Sparta and Athens... .
.....
... [T]his presumption is to be found in every code of law which has reason, and religion, and humanity, for a foundation. It is a maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman... .
Morgan's conviction here was appropriate because credible evidence accepted by the jury established that he: (1) was armed with a pistol absent any justifiable reason being shown; (2) interfered with firemen trying to do their duty; (3) refused to obey them; (4) cursed a fireman; and (5) brutally wounded Fireman Coleman with the pistol. Reversal is ordered because the trial judge accepted Juror Boone's word ("Yes") that the verdict was indeed his verdict. The trial judge was there where he could (but we cannot) observe the expression on the juror's face, hear the tone of his voice, and scrutinize his demeanor. My studied opinion is that the judge acted within his sound judicial discretion in accepting the jury verdict, but the majority holds that the judge should have "inquired whether the juror desired additional time in which to consult with his fellow jurors...." In so holding, the majority has substituted its judgment for that of the trial judge and usurped a function which belongs to him. The majority has presumed the trial judge's action was wrongful. Previously the rule has been that action of a trial judge is presumed to be correct unless manifestly shown to be otherwise.
The conviction should be affirmed.
ROBERTSON, P.J., joins in this dissent.
PATTERSON, Chief Justice, specially concurring:
I concur in the result of the majority opinion but do so for a different reason. The colloquy between the trial judge and the juror, in my opinion, was probably the result of the jury not being instructed upon the presumption of innocence.
It is true, as mentioned in the dissent, that we held, among other things, in Newell v. State, 308 So.2d 71 (Miss. 1975), the trial judge "shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so." 308 So.2d at 78. Such language was not intended to diminish the duty or the initiative of a trial judge in conducting a trial that accords with the requirements of justice.
The basic concept of every criminal trial is that the defendant is innocent until proven guilty and he is entitled to an instruction informing the jury of this presumption. This defendant did not receive this instruction although his attorney specifically requested such albeit in an erroneous form. Under this circumstance I am of the opinion the trial judge should have corrected the *235 presumption of innocence instruction presented to him or should have given a correct instruction of his own volition. No harm could possibly have resulted from it nor would the duty have been great, and very likely it would have saved the expense and time of a new trial. I do not think a defendant in a criminal case is accorded due process of law when he is not given an instruction upon the presumption of his innocence.
The suggestion that trial judges would be unduly burdened by giving basic noncontroversial instructions is without merit in my opinion. I would expand the language of Newell so the responsibility of giving the basic noncontroversial instructions would rest squarely upon the shoulders of the trial court. I would do so because the shared responsibility between the attorneys and the court has the likelihood that each might lean upon the other and the jury go uninstructed, as happened here. I speak only to the basic noncontroversial instructions such as the presumption of innocence, the form of the verdict and the number of jurors necessary for a verdict.
SUGG and BOWLING, JJ., join in this opinion.