415 So.2d 706 (1982)
Ricky MARTIN
v.
STATE of Mississippi.
No. 53252.
Supreme Court of Mississippi.
June 9, 1982.
Darrell Reeves, Columbus, for appellant.
*707 Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., ROY NOBLE LEE and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Lowndes County wherein Ricky Martin, defendant/appellant, was indicted, tried and convicted for rape of a female over the age of twelve years. Upon conviction, Martin was sentenced to serve fifteen years in the Mississippi Department of Corrections. We reverse.
Prior to December 1, 1980, the prosecutrix, who was sixteen years old at the time, suffered from seizures and abnormal behavior.[1] On January 13, 1981, the prosecutrix underwent psychological testing by Dr. Mike Roberts, a clinical psychologist with the Regional Mental Health Complex. Dr. Roberts administered the Wechsler Intelligence Scale for children and the Wider Range Achievement Test for purposes of evaluation. The results of these tests indicated prosecutrix had an I.Q. of 61, which fell within the mild mental retardation range, and a mental age of approximately seven to eight years old. Dr. Roberts opined that the prosecutrix was incapable of giving informed consent to the act of sexual intercourse. Moreover, Dr. Roberts asserted a stressful situation which could include a sexual encounter, would further reduce the likelihood that a person within prosecutrix's range of intelligence could make a good decision in consenting to sexual relations with appellant.
Appellant was indicted, tried and convicted for the December 1, 1980, nonforcible rape of the prosecutrix.
Did the trial court err when it orally instructed the jury that it could include mercy as part of its verdict when it was reported that two members of the jury would not change their votes unless they could do so.
After the jury retired, the following conversation transpired between the trial judge and the jury:
THE COURT:
Bring the jury out.
(JURY IN)
THE COURT:
Members of the jury, have you arrived at a verdict?
A JUROR:
We have not, your Honor. We have several stipulations that we would like to talk with someone about  legal questions before we decide on this case.
THE COURT:
The normal procedure is that once you have heard all the evidence and received the instructions and heard argument of counsel that we cannot instruct you any further. You may ask the question, and then I'll determine at that time whether or not I can answer it or not.
A JUROR:
Your Honor, the jury cannot arrive at a decision unless  two members of the jury have  have agreed that they will not change their  their vote unless they can plead for a sentence.
THE COURT:
Mercy?
A JUROR:
Mercy.
THE COURT:
I think you could include that as part of your verdict, that after you write your verdict if the jury so wishes I think they could recommend mercy to the Court; it would not be binding on the Court, but I think you could do that if you 
A JUROR:
Very well, your Honor, may we be excused?
THE COURT:
You may retire to the jury room.
(JURY OUT)

*708 THE COURT:
All right, Mr. Reeves, you may make your record.
MR. REEVES:
I'd like to move for a mistrial based on the conversation between the Court and the jury. I believe the jurors might misinterpret  I don't think they realize that being advised they can put that on the verdict would mean absolutely nothing to the Court or would be  have no binding affect on the Court.
THE COURT:
I told them it would not be binding on the Court. Your motion for a mistrial is overruled.
Appellant contends that this comment by the trial judge was an oral instruction and denied him the opportunity to examine and enter an objection thereto, and the comment had the further effect of inviting the jury to consider a matter outside the record, thus contravening other instructions.
Ordinarily, as little verbal exchange as possible initiated by the jurors to the trial judge is desirable. Morgan v. State, 370 So.2d 231 (Miss. 1979). The reason for such a rule is explained in Pearson v. State, 254 Miss. 275, 179 So.2d 792 (1965), wherein it is stated:
In the case of Green v. State, 97 Miss. 834, 838, 53 So. 415, 416 (1910), in recognizing the great influence of these officers and the worthiness of the occupants of this honorable position, it was said:
"It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party. 21 Ency.P. and P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption." (254 Miss. at 292, 179 So.2d at 999-800)
It is now well settled in this state that a trial judge may request the numerical division of a jury without committing reversible error. See Sharplin v. State, 330 So.2d 591 (Miss. 1976). Moreover, the length of deliberation of a jury rests within the sound discretion of the trial judge. Dixon v. State, 306 So.2d 302 (Miss. 1975). However, where, upon polling the jury, a juror expresses doubt as to whether or not he has voted his convictions, the questionable verdict requires a new trial. Morgan v. State, 370 So.2d 231 (Miss. 1979).
In Cothern v. State, 217 Miss. 146, 63 So.2d 820 (1953), the jury, after deliberating for some time, asked the bailiff to summon the trial judge. When a juror asked for a definition of grand larceny and the maximum penalty, the trial judge responded appropriately. When the juror asked another question about burglary, the trial judge refused to answer, stating the instructions were before the jury. The case was reversed based upon the premise that the trial judge erred in orally instructing the jury. See also Ware v. State, 218 Miss. 173, 65 So.2d 236 (1953). In Horn v. State, 216 Miss. 439, 62 So.2d 560 (1953), a juror, during deliberations, asked the bailiff what the penalty for manslaughter was. About thirty minutes after the bailiff expressed his opinion on the matter, the jury returned a verdict of guilty but asked that defendant be given the mercy of the court. In reversing the case, this Court said:
"We are of the opinion that the record sustains the presumption that the statement made to the jury by the bailiff may have had a decided effect upon the verdict. The jury had retired from the bar and had been in consideration of the case for an hour and a half, and upon receiving *709 the statement of Bond they immediately made up their verdict... . (216 Miss. at 442, 62 So.2d at 561)
In Warren v. State, 336 So.2d 726 (Miss. 1976), the trial judge gave an additional instruction, stating the maximum penalty for manslaughter while the jury was deadlocked. Shortly thereafter, the trial judge gave another instruction which specified the maximum penalty for manslaughter. Twenty minutes later, the jury returned a verdict of guilty of manslaughter with a recommendation of mercy. The action of the trial judge was held to constitute reversible error. In Carrol v. State, 391 So.2d 1000 (Miss. 1980), reversible error was found where the trial judge, pursuant to a juror's request, explained malice aforethought.
The jury ordinarily should have no concern in arriving at its verdict with the quantum of punishment that may be inflicted in response thereto. Abney v. State, 123 Miss. 546, 86 So. 341 (1920).
Appellant was charged with rape pursuant to Mississippi Code Annotated section 97-3-65(2) (Supp. 1981). Upon conviction, a life sentence may be imposed by the jury; however, if the jury fails to affix punishment at life, the court must impose punishment within its discretion. Although the record does not reveal how long the jury deliberated before reaching its verdict following the trial judge's comment, we believe the judge's comment may have had a decided effect upon the verdict.
The statement to the jury that it could include a recommendation of mercy as part of its verdict could have been interpreted as an invitation by the trial judge that the jury's recommendation would have a bearing on appellant's punishment and may have caused the two jurors to change their verdicts to guilty. We would also point out that instructions to the jury should be presented in written form only, where possible.
Based on the foregoing reasons, appellant's conviction is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] It was stipulated that appellant engaged in sexual intercourse with the prosecutrix on December 1, 1980.