446 So.2d 570 (1984)
Manuel GIRTON
v.
STATE of Mississippi.
No. 53977.
Supreme Court of Mississippi.
February 8, 1984.
Rehearing Denied March 14, 1984.
*571 John Booth Farese, Farese, Farese & Farese, Ashland, Russell X. Thompson, Memphis, Tenn., for appellant.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
HAWKINS, Justice, for the Court:
Manual Girton was indicted by the grand jury of DeSoto County for murder of one John Cooley, tried and convicted of manslaughter and sentenced to serve a term of seven (7) years in the Mississippi Department of Corrections.
We first reject Girton's contention on appeal that the evidence failed to support the verdict of the jury. It is only necessary that we address the propriety of the circuit judge's subsequent instruction to the jury during its deliberation.
When both sides had rested, the circuit judge instructed the jury. Among the instructions granted were the following:
Instruction S-1
The Court instructs the Jury that if death is inflicted upon a person with a deadly weapon, in a manner calculated to destroy life, then malice and intent to kill may be inferred from the use of the weapon.
The Court instructs the Jury that in order to justify a homicide on grounds of self-defense, the danger to the Defendant must be actual, present, and urgent, or the Defendant must have reasonable grounds to apprehend design of assaulted party to kill him or do him great bodily harm, coupled with imminent danger of such design being accomplished, and mere fear, apprehension or belief, will not justify the assault.
The Court instructs the Jury that in this case that unless you believe from the evidence in this case that MANUEL GIRTON, had reasonable, actual and urgent grounds to believe that the deceased, JOHN D. FRANK COOLEY, intended to do him some great bodily harm, and that he the said deceased, JOHN D. FRANK COOLEY, had the present ability to carry out said design to do the said MANUEL GIRTON great bodily harm, then and only then, was MANUEL GIRTON, justified in taking the life of JOHN D. FRANK COOLEY.
Instruction S-6
The Court instructs the Jury that in order to justify a homicide on the plea of self-defense, there must be something shown in the conduct of the deceased indicating a present intention to kill or do some great personal injury to the slayer and imminent danger of such intention being accomplished; mere fears or belief are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing him some great bodily harm.
A party may have an apprehension that his life is in danger and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the ground upon which he acted.
When the jury had deliberated three hours and fifteen minutes, the circuit judge received the following written request from a juror:
To me the State has not proved beyond a reasonable doubt that Mr. Girton was put into a position of having his back to the wall, pushed into a corner and made to take some sort of action to protect his life, family or home. The action he took may not have been proper, but it might have been the only action he felt he could take at the time. Some of the other Jurors tell me I am not following the law as it was laid out for us (And there is what, I believe to be a period) My feelings, if I am wrong, please show me at what point I am failing and I could possibly change my opinion.  signed Boyd Goodnight.
Over the objection that the question contained in the request was adequately covered and further comment would be prejudicial, *572 the circuit judge wrote the following instructions to the jury:
The State does not have to prove that the acts of the Defendant were reasonable. It is a question of fact for the Jury to determine. The reasonableness of his acts are factual questions. Apply the written instructions to the facts as you determine them to be.
Less than thirty minutes following receipt of this instruction the jury returned a verdict of guilty of manslaughter.
Girton and the decedent were members of a gypsy group. It is apparently a gypsy custom to have open fights between women who have fallen out, at which occasion a crowd gathers to witness the event.[1] Earlier in the day, on Christmas Eve, 1980, Girton's wife and her sister had a fight with the decedent's sister, Rachel, in which Rachel came out second-best. Rachel demanded a re-match under their gypsy code "duello", which was accepted. She and Girton's sister-in-law, Pansy, were having it out in front of Girton's trailer before a crowd of interested, and no doubt, partisan gypsy spectators.
Not surprisingly during these proceedings, one or two shots were fired. A bullet struck the decedent and during hospitalization eleven days later, he died.
Following the shooting Girton and his family promptly had serious business in another state. He was later apprehended in Nashville, Tennessee.
The defense of his two Tennessee attorneys at trial, besides claiming Girton's weapon did not fire the fatal shot, was defense of his home and family. The state's position and proof was no one was interfering with the fight, and none of the group, with the sole exception of Rachel, was physically threatening anybody. Rachel, as stated, and Pansy, were occupied with one another.
This setting provided the basis for the two instructions given to the jury by the trial judge during his charge.
Although we can only surmise, it was apparently this rather unusual settlement procedure which prompted the inquiry from Juror Goodnight.

LAW
One of the most nettlesome problems faced by a circuit judge is an inquiry from the jury when it has retired to reach its verdict. The ensuing colloquy between the judge and jury, or instruction resulting therefrom, or both, have been one of the grounds of many appeals to this Court.
We really cannot lay down hard and fast legal principles to govern the myriad circumstances in which a problem may arise.
The patient and attentive judge has heard the evidence, following which he has diligently endeavored to instruct the jury on every possible relevant aspect of the case to guide this body in its deliberations. Having done so, and while he, the parties, and their counsel await the verdict, the judge is called upon to answer some question a juror has about the case.
What is he to do? In deference we offer some common sense suggestions.
Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given.
Of course, a circuit judge may realize such a necessity even in the absence of an inquiry from the jury, and under such circumstances quite properly may give the jury additional written instructions. See Wages v. State, 210 Miss. 187, 49 So.2d 246 (1950).
The second recommendation requires the trial judge to constantly bear in mind that justice in every trial requires communication and understanding. Unless words are clearly understood, there is only a communication of sound, or worse, a distinct possibility of the receiver of the information *573 placing a different meaning on what is spoken or written than the author meant. This is critical in any communication from the circuit judge to the jury, or between the judge and jury.
Therefore, a judge should make absolutely certain he understands precisely what is meant in any inquiry from the jury. Unless he is quite certain precisely what the jury means in its inquiry, how can the judge know he is responding properly?
In this case, the circuit judge may have understood precisely what Juror Goodnight meant. While this Court believes we have some understanding of what was troubling this juror, we must at the same time concede we are not sure.
If the juror was indeed resolving an inquiry on a certain principle of law as appears from this record, and as the circuit judge apparently understood it, the principle of law had already been thoroughly covered in the two previous instructions. Also, as we have noted, we cannot be sure what this juror meant.
In Warren v. State, 336 So.2d 726 (1976), the jury appeared deadlocked, whereupon the circuit judge gave an instruction on punishment of murder and manslaughter convictions, and, the jury remaining deadlocked, the circuit judge gave an additional and more detailed instruction on punishment. The defendant objected on the ground there was an implication in the instructions that if the jury convicted of manslaughter the court would give a lesser sentence. We reversed a manslaughter conviction returned after 20 minutes' deliberation following the final instruction. The subsequent instructions of the circuit judge did imply he would give a lighter sentence if the jury returned a guilty verdict on manslaughter.
A closer case is Martin v. State, 415 So.2d 706 (1982). The jury was deadlocked ten to two, and reported to the court the two would not change their vote unless they could plead for a sentence. The circuit judge asked if they meant mercy, and received an affirmative reply. The circuit judge then told them they could write mercy in their verdict, it would not be binding upon the court, but they could do so.
When the jury retired a motion was made for a mistrial, counsel stating the following as to the jury: "I don't think they realize that being advised they can put that on the verdict would mean absolutely nothing to the Court or would be  have no binding effect on the court."
The motion for mistrial was overruled, the circuit judge believing he had made the point clear enough.
In reversing, we agree with the defendant, stating, p. 709:
The statement to the jury that it could include a recommendation of mercy as part of its verdict could have been interpreted as an invitation by the trial judge that the jury's recommendation would have a bearing on appellant's punishment and may have caused the two jurors to change their verdicts to guilty.
Martin does not hold that it is necessarily error for a jury to be instructed, upon specific inquiry, that in returning a verdict it can ask for mercy, but does hold that if a circuit judge so informs a jury he is also under duty to make it clear beyond question that this is not any invitation or inducement to the jury to return a guilty verdict. The circuit judge, not the jury, decides upon the punishment, in most criminal cases.
In this case we do not have a situation as in either Warren or Martin.
In Carrol v. State, 391 So.2d 1000 (1980), the jury during deliberation asked the circuit judge to interpret "premeditation". Following a colloquy, the circuit judge told them "premeditation" was not in the instructions, and the phrase "malice aforethought" was to be considered.
The jury then asked for an interpretation of "malice aforethought". The court responded, p. 1003:
All right, let me say this. All I can say about malice aforethought is that there is no time limit as long as the malice aforethought existed before the incident *574 occurred, and there is no definition of law of any length of time.
In reversing, we stated, p. 1004:
It is pointed out by appellant that the homicide in this case occurred as the result of a sudden quarrel between friends and neighbors and that the State, itself, requested and was granted several instructions informing the jury that it might convict appellant of manslaughter. Under the facts and circumstances and the instructions referred to, it is argued that the actions of the trial court in entering upon the above discussion, and in defining malice aforethought or premeditation to the jury was extremely harmful and prejudicial and influenced the jury to convict of murder rather than manslaughter. Ordinarily, parties are afforded an opportunity to examine and object to instructions proposed to be given to the jury. Here, no reasonable opportunity was afforded the appellant to object until the jury retired. When that happened, the defense motion for a mistrial was entered immediately. We have concluded that substantial justice and traditional notions of fair play require that the case be reversed and remanded for a new trial.
In Morgan v. State, 370 So.2d 231 (1979), when the jury returned its verdict into open court, the jurors were polled.
COURT: Is this your verdict? Yes.
BOONE: I guess so ... I did not not want to be the one to hang the jury.
COURT: Do not say anything else. Is this your verdict?
BOONE: Yes.
In reversing and remanding, we stated, p. 232:
We are of the opinion that when the individual juror expressed a doubt as to whether he was voting his convictions in response to the instructions of the court or whether he was voting the way he did, contrary to his conviction, so as not to be unpopular with his fellow jurors, the judge should not have cut the juror off from expressing his feelings. The judge should have allowed the juror to express himself and then inquired whether the juror desired additional time in which to consult with his fellow jurors, or he could have declined to poll the jury further and returned the jury for further deliberation. In either event, additional instructions appropriate to the circumstances could be given if requested by the attorneys in writing or if deemed necessary by the court.
We are of the opinion that the questionable verdict in this case requires us to rule that no verdict either of acquittal or conviction was reached and that the case must be tried anew. By our holding we are not saying that a dialogue between the court and jury is to be encouraged except in those unusual circumstances such as the one presented in this case. Ordinarily, as little verbal exchange as possible initiated by the jurors is desirable.
In the recent case of Stubbs v. State, 441 So.2d 1386 (Miss. 1983), there was a colloquy between the circuit judge and the jury bearing similarity both to Morgan and Martin, supra. A juror expressed some hesitancy about his verdict, and the circuit judge permitted a limited expression, and directed the jury to return for further deliberation. We did not find in Stubbs the possibility of misinterpretation by the jury that the judge's statement was an inducement or encouragement to render a guilty verdict, and therefore affirmed.
In Newell v. State, 308 So.2d 68 (1975), there were two criminal defendants, and after the jury had retired to consider a verdict, it inquired of the circuit judge whether it could convict one and acquit the other.
The court responded as follows in writing: "The court has received an inquiry from the jury as follows: Can the jury convict one and acquit the other? The answer the Court gives you to this question is that you can."
In that case we stated, at p. 69:
It is first argued that after the jury retired to consider its verdict, the court *575 could not thereafter given an instruction to the jury. In Wages v. State, 210 Miss. 187, 49 So.2d 246 (1950), this Court found no reversible error when, in response to an inquiry from the jury after it had retired to consider its verdict, the trial court granted an instruction. Conceding that the proper procedure requires that all instructions be submitted before the jury retires, the Court in Wages said that a clear understanding by the jury of the controlling issues was more important that following the letter of procedural formula, and that what the jurors are instructed upon is more important than when it is done. On the authority of Wages, we hold that instructing the jury after it had retired to consider its verdict was not reversible error. Rule 14, Uniform Rules of the Circuit Courts, requiring instructions to be filed twenty-four hours in advance of trial may be and often is, out of necessity, waived.
In this case, because the meaning of the juror's inquiry was not completely free from doubt, it would have been preferable for the circuit judge to see that the meaning was unquestionably clear before making a determination whether a response was necessary. Further, even the meaning ascribed by the circuit judge to the inquiry required nothing more than a court direction to follow the instructions.
At the same time we can find absolutely nothing about either the inquiry or the circuit judge's response which would induce an otherwise doubtful juror to return a verdict of guilty.
Accordingly, we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Girton and his witnesses denied this custom at trial.