## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00680-SCT

*RODERICK CAMERON*

*v.*

*JERRY OWENS AND 18 PLAZA, INC.*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 4/20/94 |
| TRIAL JUDGE: | HON. FRANK G. VOLLO |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES ANDERSON, JR. |
| ATTORNEYS FOR APPELLEES: | MELVIN H. MCFATTER |
| | ALLEN L. BURRELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 4/17/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

Before us is an appeal from a take-nothing judgment in the Claiborne County Circuit Court in favor of Roderick Cameron against Jerry Owens and 18 Plaza, Inc. Cameron argues that the trial judge erred in accepting the verdict of the jury after polling of the jury revealed that nine jurors had not assented to the verdict; that the judge erred in interrogating the jury when polling of the jury indicated that less that nine jurors had assented to the verdict; and that the trial court erred in granting additur or a new trial. We find no merit in these assignments of error, and we affirm the take-nothing judgment.

### I.

This appeal stems from an incident which occurred at Jerry's Friendly Mart on December 14, 1990, in Port Gibson, Mississippi. It is uncontroverted that Jerry Owens fired four shots at Roderick Cameron as he was running away from Jerry's Friendly Mart, and that one or more of the shots fired struck

Roderick Cameron, causing him injury. As a result of the gunshot wounds, Roderick Cameron was permanently paralyzed below the waist. It is also uncontroverted that Cameron had robbed the store on previous occasions; further, on the date of the incident, prior to the shooting, Cameron had again robbed the store and was attempting to flee the scene.

Cameron sued Owens and 18 Plaza, Inc. for assault and battery, seeking damages for Cameron's injuries after having been shot by Owens on December 14, 1990. Owens and 18 Plaza, Inc. defended Cameron's civil claim by asserting that Owens acted in self-defense and in defense of his store clerk, that he effected a lawful arrest by use of deadly force, that Cameron assumed the risk of being shot, and that Cameron's actions should serve as mitigating circumstances.

The trial commenced on April 11, 1994. The incident at Jerry's Friendly Mart was taped by a surveillance video camera, and the video, seen by the jury, showed Cameron apparently robbing the store. On the video, the jury could hear the audio portion of Owens shouting at Cameron to stop, and the subsequent firing of four gunshots. In addition, Cameron admitted to taking money and food stamps from Jerry's Friendly Mart on that day in the presence of Barbara Lasure, a store clerk, and to many other prior incidents at Jerry's Friendly Mart, including threatening Barbara Enderli, a clerk at the store, with concrete, a wrench, and his bare hands.

During the jury deliberations the trial judge received this written question from the jury: "Your Honor, can we find for the plaintiff and not award any money?" Cameron objected, and the judge overruled, returning this answer: "4/13/94 The Jury can return such a verdict. Frank Vollor Circuit Judge." Later, the jury sent another question to the judge: "Your Honor, is it necessary for the jury to agree on an amount, if the verdict is for the plaintiff? The Jury." The trial judge made the following written response: "4/14/94 At least 9 or more of the Jury must agree on an amount for it to be returned as a verdict. Frank Vollor, Circuit Judge." Neither side objected to this response. The jury, later on April 14, returned the following verdict: "We the jury, find for the plaintiff, Roderick Cameron, and award him the sum of zero dollars."

## II.

Cameron's first assignment of error is that the trial judge should not have entered the jury verdict, based on what polling by the judge revealed. However, this point assumes that the polling revealed that nine jurors had not assented to the verdict. This assumption is premature, and requires clarification.

The record indicates that the jurors returned the following verdict: "We the Jury find for the Plaintiff Roderick Cameron, and award him the sum of zero dollars." Anderson, Cameron's attorney, requested a jury poll. The judge began to poll the jurors in the following fashion:

> THE COURT: Okay. A request has been made that the Jury be polled. That means I am going to ask each one of you one at a time if that was your verdict and just nod your head yes or no. I'll start on the first row. Was that your verdict?
>
> JUROR: Was it?
>
> THE COURT: Yes. Yes or no.

JUROR NO. 1: Nodded negatively.

THE COURT: Was not?

JUROR NO. 2: The verdict that was read.

THE COURT: Yes. The verdict that was read.

JUROR NO. 2: On both?

THE COURT: Pardon?

JUROR NO. 2: On both?

THE COURT: Yeah, the total verdict. Was that--okay.

JUROR NO. 3: The total verdict?

JURORS ALL AT ONCE: I don't understand, Judge. (Everyone talking at once.)

THE COURT: They don't understand.

JUROR: Are you saying - -

THE COURT: I'm asking you is the verdict that was read that said, "We, the Jury, find for the Plaintiff and award him the sum of zero dollars" is that the verdict of the Jury.

JUROR: Determining on it based on testimony?

THE COURT: Yes.

JUROR: Had to vote two different times. We had to do two different things.

THE COURT: Okay. Y'all voted twice?

JUROR: Yes. We voted what we found and then we voted for the money part second.

JURORS: (Everyone talking at once.)

THE COURT: Let me start with the first. The fact that the verdict for the Plaintiff. Was that your verdict?

JUROR: Yes.

THE COURT: Was that your verdict?

JUROR: For the Plaintiff? No.

THE COURT: Was that your verdict?

JUROR: Yes.

THE COURT: Okay. On the back row.

JURORS: Two no nods and three yes nods.

THE COURT: What was the total count?

MR. BURRELL: It was nine to three.

MR. McFATTER: Nine to three.

THE COURT: Nine to three for the Plaintiff. Now was the award of zero damages was that your verdict? What was that count? Let me go through this again. The zero damages. Okay. No. That's one no. Yes, two nos, two yeses, three nos, that's three yeses. Was that three yeses? Back over here.

JUROR: Zero damages. Yes.

THE COURT: Okay. Yes. Okay. Yes. In the middle there.

JUROR: Yes.

THE COURT: And on the end.

JUROR: yes.

THE COURT: That's nine to three again.

The jury eventually was dismissed, and the judge noted that the jury took two votes: on liability the vote was nine to three, and on damages the vote was also nine to three. However, different jurors made the votes on each element. The judge never again asked the jurors whether the verdict form *as returned* was their verdict. The jury was given one instruction regarding the form of the verdict--"We the Jury find for the plaintiff, Roderick Cameron, and assess to him damages in the sum of $_____." It is apparent, however, that the jury took two votes--one on liability and one on damages. The record does not indicate that the judge actually told the jury to bifurcate their voting, but in civil cases this bifurcation is necessary.

The appellant sought a mistrial, which the trial judge denied. Therefore, on appeal, the standard of review is whether the trial judge abused his discretion in failing to grant such mistrial due to any error committed during the polling of the jury after it had returned its verdict.

There is no rule saying that the first time nine jurors vote one way or the other in a civil action, the verdict is finally fixed and is no longer subject to discussion or debate. *Salter v. Watkins*, 513 So. 2d 569, 572 (Miss. 1987). A jury should not return a verdict in a civil case until nine or more jurors assent to the verdict and until the jurors are of the opinion that no further discussion is needed in order to return a true and proper verdict. *Id.*

When a poll is conducted promptly on counsel's request, no prejudice or compromise of the jury's verdict will be presumed, and any such compromise or prejudice must be proved from the record by the party claiming to be aggrieved by the acceptance of the jury poll. *Edwards v. State*, 615 So. 2d

590, 599 (Miss. 1993). This Court presumes that the jurors have followed the trial judge's instructions. *Odom v. Roberts*, 606 So. 2d 114, 117 (Miss. 1992). This Court also presumes that each juror, when polled individually, answered truthfully. *Edwards*, 615 So. 2d at 599. The jury poll is still the only recognized means of ascertaining whether a juror was induced to yield to assent to a verdict against his conscientious convictions. The jury poll practice will continue to be the only method for asking jurors "Is this your verdict?" *See M.R.C.P.* 49, cmt.

The record indicates that once the jury determined that a verdict should be returned for the plaintiff, the jury must have considered the matter concluded. It was at that point the jury considered whether the plaintiff should recover any damages. However, when the judge polled the jury to determine whether the verdict form as returned represented their verdict, there was clearly some confusion. The trial judge did not clarify for the jury why there was a problem. Instead, he changed his polling questions, which the jury understood. Nonetheless, the judge failed to provide additional instructions to the jury as to what was necessary in order for them to return a verdict--the assent of at least nine jurors to the verdict that was returned.

It is reasonable to assume that the last vote taken by the jurors--the one regarding damages--represents the verdict of the jury. Necessarily, those jurors who voted that the plaintiff receive zero damages voted for the plaintiff. Ergo, the nine-to-three vote that was polled by the judge represented a vote for the plaintiff in the amount of zero dollars, and the poll did reflect that nine jurors assented to the verdict. The poll and the jury vote taken regarding liability becomes irrelevant, since the last vote taken by the jury is consistent with the verdict submitted, which is consistent with the poll taken. The trial judge did not abuse his discretion by denying the motion for mistrial. The judge's acceptance of the jury verdict is not cause for reversal.

### III.

Cameron next argues that the interrogation of the jury members as to their votes on liability and damages and the trial judge's response to the jury question regarding their ability to find for the plaintiff and award no money together constituted improper influence of the jury. The jury question was, "Your Honor, can we find for the plaintiff and not award any money?" Cameron objected, and the judge overruled, returning this answer: "4/13/94 The Jury can return such a verdict. Frank Vollor Circuit Judge."

A jury may be polled but not otherwise interrogated. *Rayner v. Lindsey*, 243 Miss. 824, 835, 138 So. 2d 902, 907 (1962). A trial judge should not make unnecessary comments to the jury during its deliberations. *Stubbs v. State*, 441 So. 2d 1386, 1389 (Miss. 1983). Rather, the trial judge and the jury should engage in as little dialogue as possible. *Harrison v. State*, 534 So. 2d 175, 184 (Miss. 1988). Trial judges must be certain when faced with a question or other communication from the jury that they understand what the jury means. *Girton v. State*, 446 So. 2d 570, 573 (Miss. 1984). Only when a jury expresses confusion is clarification of that confusion by the trial judge encouraged. *Id.* Moreover, when communicating with a jury, a trial judge must not to do or say anything which the jury would interpret as inviting them to return a particular verdict. *See Id.* at 573-575.

A trial court should declare a mistrial if the jury has been biased or otherwise tainted. *Esparaza v. State*, 595 So. 2d 418, 425 (Miss. 1992). The inquiry in the case sub judice must consist of whether or not the judge tainted or biased the jury when he answered that the jury could find for the plaintiff

and return a verdict of zero damages. In *Girton*, this Court made some observations in regard to a circuit judge giving supplemental instructions to the jury after it retires to consider its verdict:

> The second recommendation requires the trial judge to constantly bear in mind that justice in every trial requires communication and understanding. Unless words are clearly understood, there is only a communication of sound, or worse, a distinct possibility of the receiver of the information placing a different meaning on what is spoken or written than the author meant. This is critical in any communication from the circuit judge to the jury, or between the judge and jury.

*Girton*, 446 So. 2d at 573.

We find that the trial judge did not abuse his discretion because he did not interrogate the jury. Polling the jurors on their votes did not influence their decision, nor was it unfair interrogation as to why they voted as they did. Regarding the alleged indorsement of the jury's award of zero damages, however, a closer analysis is appropriate.

The jury retired to deliberations at 6:25 p.m. on April 13, 1994. At approximately 10:50 a.m. the jury asked the question about finding for the plaintiff and not awarding any money. The verdict was given at 11:45 a.m. The jury had been instructed, by instruction 4-A, on mitigating circumstances. This instruction told the jury that certain circumstances may be considered in lessening the plaintiff's damages if the jury found for him.

The most comparable case in our jurisdiction is within the criminal context, where this Court reversed because an answer given by the trial judge in response to a jury inquiry may have improperly accentuated an instruction.

> In this case the jury had already been amply instructed, indeed, more than amply instructed in S-4. There was no need to further instruct them. While the circuit judge was undoubtedly trying to deal with a vexing type of problem as best he could, we believe the proper response to the jury would have been that they had already been properly instructed on this question and to read their instructions.

*Haynes v. State*, 451 So. 2d 227, 231 (Miss. 1984). *But see* *Fore v. Quave*, 377 So.2d 919, 920 (Miss. 1979)(approving question from jury--"The amount of money to be awarded is zero; how should it be indicated?"--and response from judge--"In your verdict-fill in the one you have.")

In the instant case, jurors were instructed that they could reduce the damages for the plaintiff, if they found any damages at all. The trial judge was faced with a problem, but it was his job to make clear the instructions to the jury. The simplicity of the answer given by the judge does not appear to show a leaning one way or the other. Further, if a complainant alleges that a judge's answer to a jury question was improper, the burden should be on the complainant to show that if that answer had not been given, a different verdict would have been reached. Here, the jury had substantial evidence for mitigating circumstances, and even though the instructions imply that the jury could reduce the damages to zero, the trial judge did not err in answering the question. When faced with such an incongruous result as a plaintiff winning, but not receiving monetary damages, the jury should be able to seek guidance from the trial judge as to the propriety of a verdict. In the same light, it is the trial

judge's duty to make sure that the answers given are not indicative of bias one way or the other. Such was the case here, and we do not hold the trial judge in error.

## IV.

Finally, Cameron urges that the trial court erred in denial of the motion for additur. Miss. Code Ann. § 11-1-55, "Authority to impose condition of additur or remittitur," provides:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

*J. O. Hooker & Sons v. Roberts Cabinet Co.*, 683 So. 2d 396, 403 (Miss. 1996).

In determining whether or not a trial judge committed reversible error in denying a motion for a new trial, this Court inquires as to whether the trial judge abused his discretion in so doing. *American Fire Protection, Inc. v. Lewis*, 653 So. 2d 1387, 1390 (Miss. 1995). This same abuse of discretion standard applies to this Court's review of a trial judge's denial of a motion for additur. *Harvey v. Wall*, 649 So. 2d 184, 186 (Miss. 1995). In order to remand this case for an additur on damages, this Court must find that the jury was biased or prejudiced or that the verdict was against the overwhelming weight of the evidence. *Rodgers v. Pascagoula Public School Dist.*, 611 So. 2d 942, 944 (Miss. 1992).

There is substantial evidence to show that Cameron's prior actions regarding Jerry's Friendly Mart could constitute mitigating circumstances warranting that he be entitled to no monetary recovery. The jury was aware that Cameron had threatened and robbed the same store several times, weeks before he was shot. The jury was also aware of the incidents that occurred in the store immediately prior to the shooting. There being no showing of bias or prejudice in the jury, this Court finds that the jury's verdict was not against the overwhelming weight of the evidence.

## V.

The trial judge did not abuse his discretion or manifestly err in his polling of the jury or his acceptance of the verdict. Further, the trial judge correctly refused to grant a new trial or additur. We therefore affirm the jury verdict in favor of Roderick Cameron in the amount of zero dollars.

**JUDGMENT IS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**