LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Raymond Murrell, a/k/a Raymond Jackson, was indicted in the Circuit Court of Newton County for the murder of Kenneth Saveli. Steven Saveli, Kenneth Sa-veli’s grandson, was also initially charged with the murder of Kenneth Saveli. On December 8, 2005, a jury found Murrell guilty of the lesser charge of manslaughter. Murrell was sentenced to twenty years in the custody of the Mississippi Department of Corrections.
¶ 2. At trial, conflicting testimony was presented concerning Murrell’s involvement in the murder. Saveli, who plea bargained for a manslaughter conviction in exchange for his testimony, testified that he and Murrell met on the morning of August 17, 2004, in Newton County and mowed two lawns in exchange for narcotics. After the two consumed the narcotics, Murrell asked Saveli where they could get some guns to exchange for more narcotics. Saveli replied that there were guns at his uncle Larry Saveli’s house (Saveli’s grandfather also lived in this house). They drove to his uncle’s house. Saveli testified that Murrell left the vehicle, went inside the house where Saveli’s grandfather was, and returned with a shotgun which they gave to a drug dealer in exchange for narcotics. Saveli then testified that it was not until later that he learned of his grandfather’s death. Out of fear that he would be blamed for the murder, Saveli bought back the shotgun from the drug dealer and threw it in a creek. Saveli told law enforcement a week before trial what he had allegedly done. Police searched the creek for the shotgun and found a gun, but it was not the same gun that was taken from Saveli’s uncle’s house.
¶ 3. Murrell told a different story of the events of August 17 through four statements given to and recorded by law enforcement. Murrell, through the statements, stated that after mowing lawns for drugs, he was riding with Saveli in his truck when Saveli said “don’t be scared of *977 what I’m about to do.” At some point, Saveli asked Murrell to reach in the back seat and get a hatchet. Saveli announced that he was going to “kill the old man” with the hatchet. Saveli asked Murrell if he would “knock him off,” and Murrell replied no, that he did not have the heart to kill the old man. Murrell next testified that upon arriving at Saveli’s uncle’s house, Saveli got out of the truck and went inside the house. At the time of the murder, Saveli’s grandfather was alone in the house. A struggle occurred inside the house, as evidenced by testimony from forensic pathologist Steven Hayne, after which Saveli’s grandfather was thrown out the bedroom window. Murrell first stated that he stayed in Saveli’s truck the whole time and could hear “bumping” inside the house. However, in a later statement, he admitted that he walked in the house where he saw blood on the floor and saw Saveli throw his grandfather out the window. Murrell testified that Saveli emerged from the house with a shotgun and a balled-up towel. As they drove away Saveli asked Murrell to throw away the hatchet, which had broken into two pieces, and the towel. Murrell threw them in the woods. The two men pawned the shotgun for $40 worth of dope. According to Murrell, Saveli later told him that they would not have to worry about money anymore after his uncle, Larry Saveli, got the insurance money.
¶ 4. Murrell now appeals the jury verdict of manslaughter to this Court asserting the following issues: (1) the trial court erred in its answer to the jury’s second question; (2) the trial court erred in failing to grant his motion for a directed verdict, request for a peremptory instruction, and motion for a new trial.
¶ 5. Finding no error, we affirm.
DISCUSSION
I. DID THE TRIAL COURT ERR IN ITS ANSWER TO AN INQUIRY BY THE JURY AFTER IT RETIRED TO REACH ITS VERDICT?
¶ 6. During jury deliberations, the jury presented the following question to the trial court: “Does knowledge of intent to kill in advance constitute being an ‘active participant’?” The trial court answered in writing: “Yes. Whenever a person has knowledge that another person intends to kill, and thereafter takes an active part in the killing, then he becomes an active participant.” While no objection was made at trial, Murrell now argues that the conflict between the direct answer “yes” and the explanation could have only confused the jury.
¶ 7. “One of the most nettlesome problems faced by a circuit judge is an inquiry from the jury when it has retired to reach its verdict. The ensuing colloquy between the judge and jury, or instruction resulting therefrom, or both, have been one of the grounds of many appeals to this Court.” Girton v. State, 446 So.2d 570, 572 (Miss.1984). In Girton, the supreme court made the following observations in regard to a circuit judge giving supplemental instructions to the jury after it retires to consider its verdict:
The second recommendation requires the trial judge to constantly bear in mind that justice in every trial requires communication and understanding. Unless words are clearly understood, there is only a communication of sound, or worse, a distinct possibility of the receiver of the information placing a different meaning on what is spoken or written than the author meant. This is critical in any communication from the circuit judge to the jury, or between the judge and jury.
*978 Id. at 572-73. The court “found it critically important that the judge understand precisely what the jury meant by its inquiry. Just as important is that the jury understand precisely what the court meant by its instruction.” Nicolaou v. State, 534 So.2d 168, 175 (Miss.1988).
¶ 8. While the trial court’s answer “yes” if read alone may have caused confusion, we cannot find that the explanation as a whole was misleading. An accessory before the fact is one who does something that “will incite, encourage, or assist the actual perpetrator in the commission of the crime.” Malone v. State, 486 So.2d 360, 363 (Miss.1986). An accessory before the fact who acts as an accessory to any felony “shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.” Miss. Code Ann. § 97-1-3 (Rev.2006). The trial court explained that when a person has knowledge that another person intends to kill and thereafter takes an active part in the killing, then he becomes an active participant. We find that the trial court’s explanation to the jury properly conveyed the law.
¶ 9. We find Issue I without merit.
II. DID THE TRIAL COURT ERR IN FAILING TO GRANT MUR-RELL’S MOTION FOR DIRECTED VERDICT, REQUEST FOR A PEREMPTORY INSTRUCTION, AND MOTION FOR A NEW TRIAL?
¶ 10. Murrell argues that he cannot be convicted as an accessory before the fact because he did not actively participate in the crime, and, therefore, his motion for directed verdict, peremptory instruction, and motion for new trial should have been granted.
¶ 11. “The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical.” Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). All challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This Court reviews the trial court’s findings regarding the sufficiency of the evidence at the time the motion for a directed verdict or peremptory instruction is overruled. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005).
¶ 12. Viewing the evidence in the light most favorable to the State, we cannot find that the trial court erred in denying Murrell’s motions. Murrell and Saveli had spent the morning obtaining and using drugs, and a rational jury could have believed that Murrell assisted in the killing of Saveli’s grandfather to get more drugs. Murrell argues that there was no direct evidence that he knowingly participated in the killing. However, “[r]arely can knowledge be proved by direct evidence.” Johnson v. State, 461 So.2d 1288, 1293 (Miss.1984). After hearing the testimony, a jury may reasonably infer the requisite knowledge and intent of the defendant. Id. We find that sufficient evidence existed in this case for the jury to infer that Murrell was an active participant in the murder of Kenneth Saveli. We find the evidence sufficient to support the denial of the motion for directed verdict and the jury verdict of manslaughter.
¶ 13. We find Issue II without merit.
¶ 14. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGH *979 TER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
KING, C.J., MYERS, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.