313 So.2d 227 (1975)
STATE of Louisiana, Appellee,
v.
Haze TRIPLETT, Appellant.
No. 55709.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*228 Charles H. Finley, Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of murder, La.R.S. 14:30(1) (1950), and sentenced to life imprisonment at hard labor. The defendant makes four principal assignments of error upon his appeal.
We do not find reversible merit in the four assignments urged:
Assignment of Error No. 1: By this assignment, the defendants complains of the effective exclusion of women from the jury venires. The defendant was tried and convicted in 1973. Subsequently, Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1974) held to be unconstitutional those provisions of Louisiana law which had limited jury service to females who volunteered; but this ruling was expressly made applicable only to convictions obtained by juries empanelled subsequent to the date of decision. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). This court has declined to make Taylor retroactive, finding that the exclusion of women from the jury venires did not go to the integrity of the fact-finding process. State v. Rester, 309 So.2d 321 (La.1975).
Assignment No. 2: The defendant was indicted by a short-form indictment for a violation of La.R.S. 14:30(1) (1950): "Murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm * * *." By this assignment of error, he contends (a) that by his bill of particulars he was entitled to certain specifics of evidentiary information (Bill No. 2), to which he is not entitled under present law, State v. Brown, 288 So.2d 339 (La.1974), and (b) that no reference was permissible to a rape committed on the decedent by the defendant as part of the single continuous transaction culminating in the murder (Bill No. 93), again a contention rejected by the jurisprudence, State v. Curry, 263 La. 997, 270 So.2d 484 (1972), State v. Williams, 263 La. 755, 269 So.2d 232 (1972).
*229 Assignment No. 3: Despite the contrary contention by this assignment (Bill No. 3), the state met its burden of proving beyond a reasonable doubt that the written confession of the defendant was free and voluntary and not the product of coercion, force, inducement, or misrepresentation. La.R.S. 15:451. State witnesses refuted the defendant's specific allegations that he had been threatened with firearms and subjected to electrical shock by a cattle prod before he confessed. The testimony of the state witnesses tended to prove that the accused confessed freely and without coercion after he had voluntarily taken a lie detector test which indicated that his statements of innocence were false.
Assignment No. 4: Finally, the defendant complains that his wife was permitted to testify against him, citing La.R.S. 15:461(2). The statute provides that neither spouse may be Compelled to be a witness against the other. However, the statute does not prohibit a wife from voluntarily taking the stand against her husband to testify to non-privileged evidence. See: State v. Jacobs, 281 So.2d 713 (La.1973); State v. Dejean, 159 La. 900, 106 So. 374 (1925); Pugh, Louisiana Evidence Law 176-177 (1974); Comment, 6 Tul.L.Rev. 489 (1932).

Sentence
Bill No. 102 was taken to the sentence as illegal and unconstitutional. In its per curiam to this bill, the trial court recognized that the sentence should be corrected on remand. Tr. 1822.[1]
The defendant is indicted for a murder committed on December 21, 1972. He is charged with violating the murder statute then applicable, La.R.S. 14:30(1) (1950). At the time of the commission of the offense, the penalty for violation of this statute was death[2], La.R.S. 14:30, or, by recommendation of the jury qualifying the verdict, life imprisonment; one of the qualified verdicts permitted was life imprisonment "without capital punishment, or benefit of parole, probation, Commutation or suspension of sentence." La.C.C.Cr.P. art. 817 (as amended in 1972 and effective before the present crime was committed). (Italics ours.)
In accordance with the qualified verdict of the jury, the defendant was sentenced to imprisonment at hard labor for life "without benefit of parole, probation, commutation or suspension of sentence." (Italics ours.) However, as we have recently held, the legislature was without power to provide for a qualified verdict which infringes upon the constitutional authority of the Governor to Commute sentences. La.Const. Art. V, Section 10 (1921); State v. Ramsey, 292 So.2d 708 (La.1974); State v. Varice, 292 So.2d 703 (La.1974). Accordingly, as in the cited cases, the sentence must be annulled and set aside, and the case remanded for sentencing in accordance with law.

*230 Decree

For the reasons assigned, we affirm the conviction. However, the sentence is annulled and set aside, and the case is remanded to the Fourteenth Judicial District Court for the Parish of Calcasieu, with instructions to the trial judge to sentence the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Conviction affirmed; case remanded for sentencing.
NOTES
[1] The trial court, of course, also has jurisdiction despite the pendency of appeal to correct an illegal sentence. La.C.Cr.P. art. 916(3).
[2] However, the United States Supreme Court declared the death penalty unconstitutional under statutes such as the present, where death or life was at the option of the jury. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Thereafter, a verdict of guilty of the crime punishable by La.R.S. 14:30 (1950) subjected a convicted defendant only to a sentence of life imprisonment, as provided by the only qualified verdict permitted by La.C.Cr.P. art. 817 (1966) before its 1972 amendment. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).

In 1973 the legislature re-defined the crime of murder by Act No. 109, providing for first degree murder (La.R.S. 14:30), and Act No. 111, providing for second degree murder (La.R.S. 14:30.1). Both of these acts became effective on July 2, 1973, and by their specific terms were not applicable to any crime committed before the effective dates of the acts, with each act also expressly providing: "Crimes committed before that time (the effective date of the statute) shall be governed by the law existing at the time the crime was committed." Section 2 of both acts. See also State v. Bullock, 263 La. 946, 269 So.2d 824 (1972).