441 So.2d 1386 (1983)
Patricia Karen STUBBS
v.
STATE of Mississippi.
No. 54016.
Supreme Court of Mississippi.
December 21, 1983.
Rehearing Denied January 11, 1984.
*1387 Charles R. Holladay, Picayune, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
Patricia Karen Stubbs was convicted of aggravated assault and sentenced to serve ten (10) years in the custody of the Mississippi Department of Corrections by the Circuit Court of Pearl River County.
On September 9, 1981, Patricia and her husband, Larry Stubbs, were estranged. Desiring to speak to her husband, Patricia went to his home in Picayune and waited until her husband arrived from his work. Although she endeavored to speak with him, Larry ignored her and went into the house and latched the door. Larry's mother told him that Patricia wanted to speak with him, but he responded that he didn't want to talk to her. On hearing that, Patricia said, "You bad M.F., stay here till I get back. I am going to show all of y'all something."
Thereafter Larry went into the yard of his home and with his brother began working on a disabled van. As they were working, Patricia appeared, drew a pistol and fired three times. Larry was struck in the right shoulder and his brother, Grayson, was struck in the foot. Evidently the third shot went astray.
Patricia Stubbs appeals and assigns as error:
1. The trial court erred in compelling the defendant's husband to testify against her when he was unwilling to do so;
2. The trial court should have granted an instruction for a lesser offense; and
3. An oral statement of the trial judge to the jury may have improperly influenced their verdict inasmuch as the jury was led to believe their recommendation of leniency would be taken into consideration.
We first consider whether the court erred in compelling Larry Stubbs to testify against his wife when he was unwilling to do so. Mississippi Code Annotated, § 13-1-5 (Supp. 1983), provides:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.
We first observe the statute provides (1) either spouse may introduce the other as a witness in all cases between them; (2) either spouse is a competent witness to testify against the other for a criminal act against a child; (3) in all other instances *1388 where either is a party litigant the other spouse shall not be competent as a witness.
We next note that Larry Stubbs objected to testifying against his wife and based his objection upon Mississippi Code Annotated, § 13-1-5 (Supp. 1983). The objection was overruled and Larry was compelled to testify against his wife, the court being of the opinion the crime charged was against the peace and dignity of the State of Mississippi and was not a domestic difficulty between the defendant and the witness. The posture of this case does not conform to either of the categories of Section 13-1-5 making one spouse a competent witness in that Larry was introduced as a witness not by his spouse but rather by the State of Mississippi, and neither did the charge concern a criminal act against a child. It is therefore urged that the third category of the section controls. It provides that in all other instances where either spouse is a party litigant the other shall not be competent as a witness against the other. Doubtless the statute makes no provision for a case in the posture of this one and since this is so, we need turn to the common law for guidance.
In Turner v. State, 60 Miss. 351, 353-54 (1882), it is held:
Stating the question most strongly for the appellant, it is this: Is the wife a competent witness against the husband in a prosecution against him for an injury to her person, when she objects to giving evidence?
The reasons why husband and wife were incompetent for or against each other at common law were: First, the unity of person and interest subsisting between them; and, secondly, the regard which the law had for the harmony of the marital relation, to preserve which neither spouse was permitted to testify against the other.
But at common law a wife was competent to testify against her husband in a prosecution for assault and battery on her. In such cases, the husband, having violated the sanctity and peace of the household, it was deemed more consonant with the interest of the public that the wife should gain protection through his punishment, than that she should be subjected to the danger of neglect and injury inflicted in the privacy of domestic life, by the husband, who had the power to exclude from its precincts all competent witnesses of his offences.
The exception was permitted for the protection of the wife; but it was a protection afforded to her not purely as an individual, but as one of the public. Punishment is not inflicted by the law upon a wrong-doer to deter him or others from again wronging the particular individual injured, but to deter him and others from again injuring any person whatever. The husband, therefore, who assaults his wife, commits an injury, not only upon her, but upon society, of which they are members. It is for the injury to the public, committed upon it through the person of the wife, that he is punished. It is for the protection of society, and of the wife as a member of society, that she is made competent as a witness against the husband, for injuries committed by him on her. It is the offence against the public for which he is tried. He is offender of the public, and not the wife alone, and she is competent to testify as a witness for the public, and not as a witness for herself.
And it is a competency not to be waived by her, or affected by her desires or fears.
The judgment is affirmed.
See also, McRae v. State, 104 Miss. 861, 870, 61 So. 977, 978 (1913); Merritt v. State, 339 So.2d 1366 (Miss. 1966); and McQueen v. State, 139 Miss. 457, 104 So. 168 (1925).
We conclude there was no error in compelling Larry Stubbs to testify against his wife even though this was against his wishes. We think his individual desire was overcome by the paramount interest of the state in preserving its criminal laws. For the foregoing reasons, we think there is no merit in the suggestion that Larry Stubbs' rights under the fifth amendment to the U.S. Constitution and those under Article III, Section 26 of the Mississippi Constitution were violated when he was required to testify against his wife.
*1389 It is next urged that the trial court should have been instructed to consider a verdict of simple assault. Of course, such an instruction is proper when the element of intent is absent from the assault. Markham v. State, 209 Miss. 135, 136, 46 So.2d 88, 89 (1950). However, the refusal to grant such an instruction is not error where there is no testimony of simple assault, as here where the victim was shot with a deadly weapon. In Grace v. State, 375 So.2d 419, 421 (Miss. 1979), a similar case, we held, "We have concluded that this is not a case in which, upon the evidence, the jury could rationally have found Grace guilty of simple assault and not guilty of the crime charged. The trial court properly declined to submit the issue of simple assault to the jury." We are of the opinion this assignment of error is not persuasive to a reversal.
Through the final assignment of error it is contended the oral comments of the judge to the jury were the equivalent of an instruction which may have influenced the jury to change its verdict inasmuch as they were led to believe that a recommendation of leniency would be taken into consideration by the trial court.
The provisions that a judge should not make unnecessary comments to the jury during its deliberations are undoubtedly strong. Pearson v. State, 254 Miss. 275, 291, 179 So.2d 792, 799 (1965). The rationale for this is stated in Martin v. State, 415 So.2d 706, 708 (Miss. 1982). It states in part,
Ordinarily, as little verbal exchange as possible initiated by the jurors to the trial judge is desirable. Morgan v. State, 370 So.2d 231 (Miss. 1979). The reason for such a rule is explained in Pearson v. State, 254 Miss. 275, 179 So.2d 792 (1965), wherein it is stated:
In the case of Green v. State, 97 Miss. 834, 838, 53 So. 415, 416 (1910), in recognizing the great influence of these officers and the worthiness of the occupants of this honorable position, it was said:
"It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party. 21 Ency.P. and P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption." (254 Miss. at 292, 179 So.2d at 799-800.
Persuaded, the court in Martin reversed and remanded because there was testimony that two members of the jury had agreed they would not change their vote, "unless they can plead for a sentence." 415 So.2d at 707. It was thus apparent that the jury had not reached a verdict and could not reach a verdict unless they could "plead for a sentence." A quid pro quo situation was thereby established. Under this circumstance we held the court's statement to the jury that it could include a recommendation of mercy with its verdict could reasonably be interpreted by the jury as an invitation for a guilty verdict by the court in exchange for which mercy would be extended to the defendant. It was for this reason that the case was reversed.
In this case the dialogue between the trial judge and the jury was entirely different, primarily in that the colloquy between the trial judge and certain jurors occurred after the verdict of guilty was read in open court. The jury was asked if that was their verdict and the jury nodded their heads in the affirmative. Following this, a request was made that the jury be polled whereupon, after some opening remarks, the trial court asked,

*1390 ... So let me start here, was that your verdict at that time when you voted and is it still your verdict?
BY JURY MEMBER:
I didn't vote not guilty, but
BY THE COURT:
No, what I'm asking you, in the final vote that you voted in the jury room and the verdict that was read in open Court, was that your verdict when you voted?
BY JURY MEMBER:
Uh-huh.
BY THE COURT:
All right, is it still your verdict at this time?
BY JURY MEMBER:
Do I have  you know, would it matter if I voted not guilty?
BY THE COURT:
In other words, I have to know that all twelve members agree. If not, I need for y'all to go back in the jury room and reconfer on this matter, unless all twelve of you have entered this verdict and if it still is each of your verdict. I don't want to confuse you; am I confusing you?
BY JURY MEMBER:
Explain it to me again.
BY THE COURT:
All right, for the jury to reach a verdict of either not guilty or guilty, all twelve of you have to agree in order for you to reach a verdict. Now, a verdict had been handed to me which I assume all twelve of you agreed on. I don't know, you may have taken many votes; I don't know, but the last vote that was taken purportedly all twelve of you agreed on this verdict; is that correct?
BY JURY MEMBER:
Uh-huh.
BY THE COURT:
All right, and do you still concur in that verdict?
BY JURY MEMBER:
(NODDED IN THE AFFIRMATIVE)
BY THE COURT:
All right, let the record show that she has acknowledged to the Court that this was her vote in the jury room and is still her vote.
BY MR. HOLLADAY: (Defense Attorney)
If it please the Court.
BY THE COURT:
Yes, sir.
BY MR. HOLLIDAY:
Did she say it was her vote that the defendant was guilty?
BY THE COURT:
That's what I understand. Did you vote on the last ballot guilty as charged and do you so still state that that is your verdict.
BY JURY MEMBER:
I still say not guilty, but
BY THE COURT:
All right, let me ask the jury to go back in the jury room at this time, and to the members of the jury, now, of course, if you're unable to agree on a verdict, then of course, that would also have to be explained, but if you will, go back in the jury room, and if all twelve of you are in agreement  I'll need you to give back to the jury the pad and pencils because they may need them to revote. So at this time the jury will be asked to go back into the jury room and reconsider your voting, and if all twelve of you can arrive at a verdict, then of course, write your verdict out.
Yes, ma'am.
BY ANOTHER JURY MEMBER:
Can we ask a question, please?
BY THE COURT:
Ma'am?
BY JURY MEMBER:
May we ask a question?
BY THE COURT:
All right, let me explain this, if you ask a question that requires me to give you a legal instruction, I will have to take time to go have it  I can only instruct the jury in writing... .
BY JURY MEMBER:
Well, it would require a yes or no.
BY THE COURT:
All right.

*1391 BY JURY MEMBER:
Are we allowed only to write we find the defendant guilty; is that all we can say and nothing else?
BY THE COURT:
You need to use one or the other forms. Of course, the other form is we the jury find the defendant not guilty, and if that's your verdict
BY JURY MEMBER:
I understand that.
BY THE COURT:
Right.
BY JURY MEMBER:
But can we say anything at all in addition to that sentence?
BY THE COURT:
Yes, ma'am, I suppose so. I don't know what you'd want to say, but I would not preclude the jury from doing anything that you wanted to do at all.
BY JURY MEMBER:
This is our question, if  we can write that sentence out, can we say something else in addition?
BY THE COURT:
Yes, ma'am or you can say it in open Court, either way. The thing that has got me puzzled is if you have a verdict, and then want to qualify the verdict, then we don't have a verdict. In other words, the jury has got to render a verdict or not.
BY JURY MEMBER:
Well, we're not qualifying; a recommendation.
BY THE COURT:
Yes, ma'am, that will be fine as long as we don't have an
BY JURY MEMBER:
No, we don't
BY THE COURT:
In other words, find  but we wish this or that. In other words, if that is the case 
BY JURY MEMBER:
No, it's a recommendation.
BY THE COURT:
Yes, ma'am, that will be fine.
BY JURY MEMBER:
That's what we wanted to know.
(JURY WAS RETURNED TO THE JURY ROOM TO CONSIDER THEIR VERDICT)
BY THE COURT:
All right, all members of the jury are present.
Now has the jury reached a verdict at this time?
BY JURY MEMBER:
Yes, sir.
BY THE COURT:
All right, Bill, if you will hand the verdict to me at this time.
All right, at this time, Peggy, if you will, read the entire verdict of the jury and the part in parenthesis also, please, ma'am.
BY MRS. STATEN:
We the Jury find the Defendant guilty as charged. We recommend leniency.
BY THE COURT:
All right, now, to the members of the jury, is this the verdict of the jury at this time that all twelve of you have agreed upon?
(JURY MEMBERS NODDED IN THE AFFIRMATIVE)
R. 63-71.
Following this the jury was again polled and each juror responded that the guilty verdict was their verdict. From this circumstance, which differs from that in Martin, it is apparent that there was no quid pro quo situation as in that case. Presently the jury was correctly instructed that their verdict could not be qualified but that they could recommend mercy if they desired. The first verdict of guilty was without a recommendation of leniency. The second verdict was with a recommendation of leniency but both were guilty verdicts absent any qualification in our opinion. Although *1392 not an issue we observe a midway term of ten years, not the maximum sentence, was imposed on the defendant.
The record reflects unequivocally that the defendant shot her husband for little, if any, reason. There being no errors of law or judgment, the verdict and sentence must be affirmed.
AFFIRMED.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.