642 So.2d 160 (1994)
STATE of Louisiana
v.
Kenneth TAYLOR.
No. 94-KK-0696.
Supreme Court of Louisiana.
September 6, 1994.
Concurring and Dissenting Opinion September 30, 1994.
*161 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Sharon Leslie Andrews, Asst. Dist. Atty., for applicant.
Blake G. Williams, New Orleans, for respondent.
Concurring and Dissenting Opinion by Justice Calogero September 30, 1994.
HALL, Justice.[*]
The issue we are called upon to decide in this case is whether there is an exception to the spousal witness privilege, LSA-C.E. art. 505,[1] that allows one spouse to be compelled to testify against the other when the testifying spouse is the victim of the defendant spouse's criminal act and/or when the criminal act takes place before marriage. The trial court found that the victim spouse could not be compelled to testify and the court of appeal denied the state's writ application. For reasons set forth below, we set aside the ruling of the trial court and remand for further proceedings.

*162 I.
The state contends that beginning at about 7:00 p.m. on May 16, 1993, and continuing until approximately 2:00 a.m. the following morning, Kenneth Taylor, then a New Orleans police officer, assaulted, threatened to kill and brutally beat his then girlfriend, Glenda Richard. He used his fists as well as his police-issue flashlight and 9mm Beretta semi-automatic service weapon to pummel the victim into a state of semiconsciousness. It is alleged that several times in these hours Taylor placed his Beretta inside the victim's mouth and threatened to pull the trigger. After the beating, Taylor put Richard and the couple's five-month-old daughter into his car and drove them to the Richard home in Violet, Louisiana. The victim's sister called an ambulance, and Glenda Richard spent several days at Chalmette Medical Center and Charity Hospital recovering from her injuries. The Internal Affairs division of the New Orleans Police Department investigated the matter and Richard cooperated. She gave a typed statement describing the beating, executed an affidavit setting forth her desire to prosecute, and appeared on video-tape. Richard was unable to read her statement because her eyes were swollen shut and because the injuries to her mouth rendered coherent speech difficult, but the video recorded her acknowledgment that the typed statement describing the attack was her own.
Pursuant to a warrant executed at defendant's home, investigators seized his broken police flashlight and bloodied 9mm Beretta. Photographs taken inside depicted blood-stained carpets, towels, walls, bed and a police uniform. Taylor was arrested May 17, 1993, and charged with aggravated battery, a violation of LSA-R.S. 14:34.[2] He entered a plea of not guilty and trial was set for December 14, 1993.
On the morning of trial, the victim appeared with her own attorney to advise that she no longer wished to prosecute and, further, that she would not testify against the defendant. When the state's motion for a continuance was denied, it entered a nolle prosequi.
The state later reinstituted prosecution and, following Taylor's arraignment in January of 1994, a status hearing was scheduled for February 24. At the hearing, the prosecution learned that the victim and the defendant were married February 14, 1994. The hearing was continued. The state then filed a motion in limine which sought (1) to bar the victim's assertion of a claim of spousal privilege, and (2) to have her written, oral and video-taped statements declared admissible. The state made an oral motion that the victim be compelled to testify.
When the hearing resumed March 15, the victim appeared, took the stand and was questioned by the court. Mrs. Taylor acknowledged that she had initiated the call to police, that she filed a complaint and that she had identified defendant as the person responsible for her injuries. She remembered having pictures taken of her face and that she had assured the district attorney's office of her willingness to prosecute, but now, she stated, she had changed her mind. The trial judge denied the state's motion with the following remarks:
... I think if this woman's crazy enough to want to get beat up by her husband to within an inch of her life, and she wants to go back and marry him, that's her business. And I couldn't stop her if she wanted to get up on a ledge and jump off the building, if I wasn't close to her. It's her life. I've seen the pictures. I think she's crazy. But what am I going to do? I'll deny your Motion in Limine.
No evidence, other than the brief testimony of the victim described above, was presented at the hearing nor was there any discussion or argument on the state's request for a ruling on the admissibility of the victim's statements.[3]
*163 The state applied to the court of appeal for writs seeking a reversal of the trial court's denial of its motion in limine and its request for an order compelling the testimony of Glenda Richard Taylor against her husband. The state's application included a copy of the couple's marriage certificate, as well as an affidavit from Aubrey Richard, the victim's mother, executed March 17, 1994, subsequent to the trial court hearing. In the affidavit, Aubrey Richard stated that three days after her daughter and the defendant were married, her daughter moved back home. She also believed that her daughter was afraid of the defendant and afraid to testify against him.
The court of appeal denied the state's writ application without assigning reasons.
We issued a stay order and granted the state's writ application, State v. Taylor, 635 So.2d 1141 (La.1994).

II.
The spousal witness privilege in Louisiana has a long history and can be traced to the common law. In 1805, the legislature adopted the Crimes Act which implemented the common law as Louisiana's criminal law.[4] See Sydney B. Galloway, EvidenceThe Husband-Wife Testimony Privilege, 19 La. L.Rev. 427 (1954). The common law provided that the husband and wife were incompetent and disqualified from testifying against one another. By Act 29 of 1886 this principle was codified in Louisiana. The act provided "[t]hat the competent witness in all criminal matters, shall be a person of proper understanding; provided, that the husband cannot be a witness for or against his wife, nor the wife for or against her husband, except in such cases as is now provided by law." This same language was carried over in Act 185 of 1902. Since these statutes were based on the common law, the exceptions that were recognized in the common law were also applicable in Louisiana. One of the exceptions from the disqualification of the spouses to testify for or against one another was where the wife had sustained a personal injury from her husband. State v. McDavid, 15 La.Ann. 403 (1860); State v. Pain, 48 La.Ann. 311, 19 So. 138 (La.1896). The rationale for this policy was set forth in State v. Parker, 42 La.Ann. 972, 8 So. 473 (La.1890), where the husband was charged with the attempted murder of his wife. In rejecting the defendant-husband's claims that the trial court erred in admitting the testimony of the wife, this court held:
The injured person is the wife of the accused. The common law authorities admit the testimony of the wife against the husband for the purpose of proving the crime committed by him on her person. The law's purpose in excluding the testimony is to respect and protect relations of faith, reliance, and confidence between the spouses. When one attempts to destroy the other, the great necessity and importance of the exclusion no longer exists. The rules of evidence in the prosecution of crimes shall be according to the common law, unless otherwise provided. Acts 1805, p. 440. Where a crime has been committed on the person of the wife, she is a competent witness.
By Act 41 of 1904,[5] the legislature added the exception that the privilege did not apply in bigamy cases, but retained the same language as was included in the previous acts. However, a major change occurred when Act 157 of 1916 adopted both the confidential communication privilege and the spousal witness privilege.[6] With regard to the witness privilege, the act stated: "Neither *164 husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other." This same provision was reaffirmed by Act 2 of 1928 and later moved to the Code of Evidence by Act 376 of 1992. Currently, the spousal witness privilege is codified in Louisiana in LSA-C.E. art. 505. The privilege provides:
In a criminal case or in commitment or interdiction proceedings, a witness spouse has a privilege not to testify against the other spouse. This privilege terminates upon the annulment of the marriage, legal separation, or divorce of the spouses.
This privilege is held by the witness spouse and can be waived by her. The statute provides that neither spouse may be compelled to be a witness against the other in a criminal trial. However, the statute does not prohibit a spouse from voluntarily taking the stand against the defendant spouse. State v. Triplett, 313 So.2d 227, 229 (La.1975).
On the other hand, the confidential communication privilege is found in LSA-C.E. art. 504. That article provides in part:
B. Confidential communications privilege. Each spouse has a privilege during and after the marriage to refuse to disclose, and to prevent the other spouse from disclosing, confidential communications with the other spouse while they were husband and wife.
C. Confidential communications; exceptions. This privilege does not apply:
(1) In a criminal case in which one spouse is charged with a crime against the person or property of the other spouse or of a child of either.
This court explained the difference between the two privileges when it discussed LSA-R.S. 15:461,[7] where both privileges were contained before being moved to the Code of Evidence:
This statute, in effect, creates two distinct privileges. The first of these is the privilege which attaches to private conversations between husband and wife and which may be asserted by the defendant-spouse. Secondly, the statute establishes a privilege in favor of a spouse called to testify against the other spouse by providing that neither spouse shall be compelled to be a witness against the other in a criminal proceeding. The exercise of this privilege rests with the testifying spouse alone and may not be invoked by the defendant-spouse.
State v. Bennett, 357 So.2d 1136, 1139-40 (La.1978). The fact that the defendant spouse can invoke the confidential communications privilege led the legislature to create a statutory exception in cases where "one spouse is charged with a crime against the person or property of the other spouse or a child of either." LSA-C.E. art. 504(C)(1).
By the passage of Act 157 of 1916, and the subsequent acts thereafter, the legislature abrogated the common law rule and the common law exceptions in Louisiana. State v. Dejean, 159 La. 900, 106 So. 374 (La.1925). The common law rule that one spouse was incompetent or disqualified from testifying against the other spouse was replaced by a privilege that provided that the spouse could not be compelled to testify, but could voluntarily do so. If a witness spouse voluntarily agreed to testify against a defendant spouse, the defendant spouse could not object unless the testimony included confidential communications and the defendant spouse invoked the confidential communications privilege. The fact that the privilege is vested solely in the witness spouse rendered unnecessary the common law exception in cases where the defendant spouse had caused personal injury to the testifying spouse, because there was no absolute bar to the *165 spouse's testimony, the defendant spouse could not prevent its admissibility, and the victim spouse could voluntarily testify.
Statutory privileges should be given a genuine construction. Although privileges serve to foster a relationship (in this instance the husband-wife relationship), they disserve the truth-seeking function of the adversary trial. Therefore, in determining the applicability of a privilege, a court should determine whether the testimony that is claimed to be privileged is in the class whose exclusion will advance the policy sought to be furthered by the privilege. State v. Fuller, 454 So.2d 119, 122 (La.1984); State v. Aucoin, 362 So.2d 503, 506 (La.1978). The policies for adopting the witness spouse privilege were an interest in preserving the family unit and "society's desire to preserve the harmony of the existing marriage by preventing ill feeling between the spouses that might result if one were required to give unfavorable testimony against the other." Galloway, supra at 428-9.

III.
The state contends that the court should establish an exception to the spousal witness privilege in cases where one spouse is the victim of abuse by the other spouse, as is the case with the confidential communication privilege, LSA-C.E. art. 504. The state believes that the refusal of this court to apply the exception in LSA-C.E. art. 504 to LSA-C.E. art. 505 would render the exception ineffective, since the testifying spouse could circumvent the exception and hinder justice by simply invoking the spousal witness privilege. It is argued that this would contravene the purpose of the evidence statutes "to secure fairness and efficiency in administration of the law of evidence to the end that truth may be ascertained and proceedings justly determined." LSA-C.E. art. 102.[8]
Additionally, the state argues that the spousal witness privilege should not apply in this case and all cases where the crime occurs before marriage and the marriage between the victim and the defendant is used as a means to foreclose the victim from testifying at the criminal trial.
The state also provides cases and codal provisions from other jurisdictions in support of its proposed interpretation of Louisiana's testimonial privileges. However, no clear or hard and fast rule is discernable, given the differences in other jurisdictions' statutory language, intricacies of evidentiary and procedural rules, and judicial interpretations. Therefore, the bulk of what the state offers from other states provides neither support for its position nor is particularly persuasive.[9]

IV.
LSA-C.E. art. 504 makes an exception where the spouse is the victim for the confidential communication privilege. LSA-C.E. art. 504 makes no such exception for the *166 spousal witness privilege. The reason for the distinction is clear: the confidential communication privilege can be exercised by the defendant, barring the victim spouse from testifying even though the victim spouse wishes to testify; the spousal witness privilege cannot be exercised by the defendant, leaving the victim spouse perfectly free to testify if the victim spouse wishes to do so.
The spousal witness privilege, as explained above, has been a part of Louisiana law for a long time, and it was recently affirmed by the legislature when it was considered and included in the Evidence Code adopted in 1992 without any exception as to victim spouses. As a longstanding and recently affirmed legislative enactment, the court would not be justified in reading into the statute an exception purposely omitted by the legislature, regardless of the court's view as to whether or not such an exception represents better policy.
Similarly, the code article makes no exception for acts occurring prior to marriage. It is generally held that the competency of one spouse as a witness depends on the existence of the relationship at the time he or she is offered as a witness, and not upon whether the relationship existed at the time of the occurrence of the events about which he or she is expected to testify. See State v. Dejean, 159 La. 900, 106 So. 374 (La.1925); 81 Am.Jur.2d, Witnesses, § 245, p. 249 (1992); Annotation, Marriage for Purpose of Barring Testimony, 13 A.L.R. 4th 1305. There is no exception in the governing Louisiana code article making the spousal witness privilege inapplicable to testimony about acts occurring prior to marriage.
However, the dynamics of spousal abuse and domestic violence cannot be ignored. Fear, self-blame, and other emotional factors often leave a battered spouse unable to make a sound judgment as to whether to testify against an abusive spouse. Exercise of the spousal witness privilege may be the result of coercion, fear, subjugation, or undue influence, perhaps not even consciously recognized by the abused spouse in some circumstances.
Recognizing these dynamics, and the barrier the spousal witness privilege erects to the prosecution of criminal offenses which are, after all, offenses against society as a whole, the privilege has been legislatively abolished in many states, and judicially limited in decisions of other state and federal courts.
While we do not feel justified or empowered to impose by judicial fiat a victim spouse exception to the legislatively established spousal witness privilege, we nevertheless feel justified and even compelled to limit exercise of the privilege where facts and circumstances established by proper evidence indicate the privilege is being exercised because of fear, threats, or coercion, especially where the marriage giving rise to the privilege is itself the result of fear, threats, or coercion or a mere sham confected to make the privilege available. We do not believe it was the legislative intent to make the privilege available under circumstances such as these, where sanctity of the marriage and marital harmony are hardly served. Also, a defendant should not be able to prevent the introduction of damaging evidence through threats, fear or coercion of a spouse witness anymore than any other witness.
Thus, in a case where the testifying spouse is the victim of the offense charged, and where the evidence supports a finding that the victim spouse asserting the spousal witness privilege is more probably than not acting under fear, threats or coercion, or that the marriage itself is a sham confected for the purpose of making the privilege available, the purpose of the privilege is not served and may, in the court's discretion, be considered as not applicable.
Applying these precepts to the instant case, we note that the evidence was not fully developed at the hearing held in the district court. Nevertheless, the facts established raise a strong inference of both fear and coercion and a sham marriage. The alleged brutal beating, the initial willingness of the victim spouse to cooperate with the law enforcement authorities, the change of heart on the day of trial, the subsequent marriage after charges were reinstated, and (although the affidavit of the victim's mother is not considered) the lack of evidence that *167 the victim and defendant have actually established a genuine marital relationship, create an inference that circumstances exist that would support the non-applicability of the privilege in this case.
Considering that we pronounce new rules in this opinion that were not available to the parties or the court at the time the hearing was held, we deem it in the interest of justice and the development of the true facts upon which a determination of the applicability of the privilege can be made to remand this case to the trial court for reconsideration and the taking of further evidence on the issue of whether the privilege is to be applied in this case and whether the victim spouse can be compelled to testify.
The ruling of the district court is set aside and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
KIMBALL, J., additionally concurs.
ORTIQUE, J., concurs in part and dissents in part, with reasons.
CALOGERO, C.J., concurs in part, dissents in part and will assign reasons.
KIMBALL, Justice, assigning additional reasons.
I join in the majority opinion and assign the following additional reasons.
The legislature has made progress in recent years in enacting legislation for the protection of victims of abuse in the areas of child abuse, domestic violence, and abuse of the elderly. However, a vehicle remains in our procedural law, under LCE art. 505, that allows a single group of violent perpetrators, abusing spouses, the ability to manipulate and control their victims and thereby thwart our system of providing justice.
Although the spousal privilege for marital communications, LCE art. 504, has been amended to remove its applicability to those situations where there is violence against children or against a spouse, no such attendant amendment has been adopted for the testimonial privilege, LCE art. 505.
La.Code Evid. art. 505 provides:
In a criminal case or in commitment or interdiction proceedings a witness spouse has a privilege not to testify against the other spouse. This privilege terminates upon the annulment of the marriage, legal separation or divorce of the spouses.
I agree with the majority conclusion that it was not the legislature's intent to make the spousal testimonial privilege available where it is exercised "because of fear, threats, or coercion," and clearly was not intended to be applicable under the facts in this case, if they are proven as alleged by the prosecution. It appears that a legislatively created exception such as that created in LCE 504, would more reasonably comport with the purpose of the privilege as pointed out by the majority (i.e. to preserve the family unit and to promote marital harmony). Clearly such harmony does not obtain where one spouse is physically assaulted by the other.
Assaults on spouses are usually committed in the privacy of the home where there are no other witnesses. In cases of physical abuse of one spouse by the other, there is often fear of retribution. As the majority recognizes, a spouse victim of abuse may be forced to perpetuate the abuse by claiming the testimonial privilege out of that fear. Under no other circumstances do we allow the perpetrators of violent crimes against the person to, in effect, hold shut the mouths of their victims. To do so in cases where a spouse is a victim not only perpetuates the victimization of the spouse, but additionally allows the continued possibility of victimization of the children affected thereby.
Additionally, although the concept is still difficult for many to comprehend, and understanding of the concept is emerging only through furthering education as to the dynamics of domestic violence and its effects on its victims and children observers, the state has no less interest in bringing violent perpetrators to justice where the victim is the spouse of the perpetrator than it does for any other victim.
*168 To its credit, the legislature of this state has a longstanding policy of protecting those who cannot protect themselves. And, to its credit, this Court has, herein, interpreted LCE 505 so as not to give the privilege an absurd meaning within the context of its purpose. However, as the majority points out, the legislatures of many states have abolished the spousal privilege in toto and others have limited its use. It is my hope that the legislature will consider once again the wisdom of continuing the spousal testimonial privilege, at least in those instances where its exercise defeats its purpose.
ORTIQUE, Justice (concurring in part and dissenting in part).
I concur in setting aside the trial court judgment and with the majority's conclusion that an implied exception to the spousal witness privilege exists under certain circumstances when the witness spouse is a victim of the offense for which the defendant spouse is charged. However, because the witness voluntarily publicly disclosed information about the offense prior to marrying defendant, I do not believe the witness spouse ever possessed the right to exercise the spousal witness privilege relative to the defendant's charged offense. Therefore, I am also compelled to dissent.
I recognize the need for an implied exception to the spousal witness privilege, under certain circumstances, when the witness spouse is a victim of the offense for which the defendant spouse is charged. Normal responses of women suffering from the Battered Woman Syndrome include denial of the abuse, fear of the abuser, accepting responsibility for the abuser's behavior, guilt and low self-esteem. Hollins, Regina L., The Battered Woman Syndrome: Justice Through Expert Testimony, Vol. 5, No. 10 National Bar Association Magazine 12 (October 1991); See also Rogers, Frederic B., Develop an Accelerated Docket for Domestic Violence Cases, Vol. 31, No. 3 The Judges' Journal 2 (Summer 1992). As such, refusal to testify against the abusive spouse, i.e., invocation of the spousal witness privilege, can be a normal response by the abused to the alleged physical abuse meted out by the defendant spouse. Hence, it is imperative for the judiciary to understand the dynamics of spousal abuse and, through justice, prevent the perpetuation of the effects of the criminal wrong from obstructing the prosecution of the offense. And, it is an imperative of the time that our courts recognize the existence of the implied exception to the spousal witness privilege.
However, in my opinion, the privilege does not apply to Glenda Richard's testimony under the specific facts of this case. The majority has, therefore, erred in focussing on whether an exception to the spousal privilege exits so as to compel the witness spouse to testify against her husband. Instead, the majority should have focussed on the witness spouse's pre-marital voluntary acts of publication of the facts and circumstances of the battery and concluded, that because of those actions, the witness spouse never possessed the right to exercise the spousal witness privilege relative to the offense for which defendant is charged.
Between May 17, 1993 and July 7, 1993, Glenda Richard publicly broadcast the alleged facts and circumstances which underlie the criminal charges against defendant. She executed an affidavit on July 7, 1993 indicating her desire to have defendant prosecuted for the 7-hour beating she endured at his hands and she gave the police a video-taped statement. By voluntarily publicly disclosing this information, she eliminated the prospect that it could afterwards be a privileged matter. Under Louisiana's legal framework, the subsequent marriage of the witness to defendant simply could not transform the public nature of the witness' sworn declarations into a private, familial matter subject to the LSA-C.E. art. 505 spousal privilege.
In my opinion, it is grave error for the majority to assume that the spousal witness privilege applies to this case, regardless of the particular facts, merely because the witness-victim married defendant prior to testifying at trial. The newlywed witness spouse herein should not be accorded greater rights than a spouse of a long-standing marriage who, post-disclosure, wishes to recall her words. Cf. LSA-C.E. arts. 102, 502(A), 505. The long-time spouse waives her spousal *169 privilege by voluntarily disclosing any significant part of the privileged matter. LSA-C.E. art. 502(A). Once disclosed, the formerly privileged matter cannot revert back to protected testimony.[1] Likewise, an after-the-fact marriage cannot convert a matter published pre-marriage into a matter protected by the spousal privilege.
LSA-C.E. art. 505 does not exist in a vacuum. It does not convert information a witness placed in the public sphere into a private, privileged topic. Tying the spousal privilege strictly to the existence of the marital contract, without regard to prior publication by the witness, causes absurd results.[2] The two factors must work in tandem, in order to secure fairness in the administration of the law. See LSA-C.E. art. 102. The viability of the spousal privilege is directly linked to the witness' objective conduct which must demonstrate an unbroken preservation of the private nature of the witness' knowledge. Any significant public dissemination of the witness' knowledge destroys its private nature as well as a present or any future privilege over the disclosed matter.
Under the facts of this case, Glenda Richard does not have a spousal privilege relative to the aggravated battery she allegedly received from defendant on May 16, 1993. Despite her general acquisition of the right to invoke the spousal witness privilege, the privilege specifically does not apply to defendant's alleged acts of brutal physical abuse for which he is charged, because the victim publicly disclosed the incident to police prior to marrying her alleged abuser. Richard's pre-marital public disclosures about the alleged beating prevented the spousal privilege from ever attaching to her testimonial rights about the beating incident. Therefore, she cannot claim the spousal witness privilege to preclude the State from compelling her testimony in regard to the aggravated battery.
Thus, in my opinion, the trial court erred as a matter of law in denying the State's motion in limine and in not ordering the witness testimony be compelled. A hearing on remand is unnecessary. The trial court's ruling should be vacated and the State's pre-trial motion granted. For these reasons, I respectfully dissent.
As stated previously, I concur with the majority in the result of setting aside the trial court judgment and with their conclusion that an implied exception exists under certain circumstances to the spousal witness privilege. The privilege was not meant to protect an abuser from prosecution for spousal abuse and/or pre-spousal abuse. The intent of the spousal privilege is to preserve the sanctity and integrity of the marriage. However, in situations of domestic violence, there is no marital sanctity or integrity to be preserved. Therefore, as the majority opinion clearly sets forth, there are implied limits to the exercise of the privilege.
At a minimum, an implied exception to the privilege exists where the testifying spouse is the victim of the offense charged and where the evidence supports a finding that the victim spouse asserting the spousal witness privilege is more probably than not acting under fear, threats or coercion, or that the marriage itself is a sham confected for the purpose of making the privilege available. In my view, this rule properly frames Louisiana law. The laws of this state are meant to protect public welfare, not to abet an abuser or impede the prosecution of a batterer.
While the factual evidence on record is scanty, the record contains sufficient evidence *170 to reasonably conclude that the object and the auspicious purpose of the spousal privilege is being misused by defendant through Glenda Richard to obstruct his prosecution for premarital domestic violence.
For these reasons, I respectfully concur in part and dissent in part.
CALOGERO, Chief Justice, concurring and dissenting.
I concur in the majority's opinion insofar as it rejects the creation of a "victim spouse exception to the legislatively established spousal witness privilege." As I will explain below, adopting the State's suggestion that the spousal testimonial privilege not apply in cases where one spouse is the victim of the other spouse, or where the crime occurs before marriage, would have gone far to undermine the express Legislative purposes behind the spousal testimonial privilege.
However, although I am in accord with the majority's concern for the endemic problem of spousal abuse, I dissent from the majority's decision to reverse and remand this case for an evidentiary hearing. This decision is both imprudent and incorrect, in derogation of the policies underlying the spousal testimonial privilege. In particular, I think that the majority errs when they say that the Legislature obviously intended not to let a witness spouse invoke the privilege under circumstances like those presented in the instant case, since the Legislature's intent is more obviously to the contrary.
Married persons enjoy both an evidentiary privilege and a testimonial privilege. The former, found in LSA-C.E. 504, protects only "confidential communications," i.e. those communications made privately between the spouses and not intended for further unprivileged disclosure. This evidentiary privilege may be asserted by the non-testifying (i.e. defendant) spouse, and endures beyond the cessation of the marriage. The testimonial privilege is found in LSA-C.E. 505, and allows a spouse to resist any compulsion to testify against the other spouse. This privilege only exists for the duration of the marriage, and may be waived by the testifying (and not the defendant) spouse.[1]
The two statutory privileges exist in order to protect two different interests, or, stated another way, to further two distinct legislatively approved policies. The evidentiary privilege exists to protect an interest in spousal confidentiality, and arises out of a legislative determination that in certain contexts, such as the marital union, the transmission of truthful statements should be facilitated. See also LSA-C.E. Arts. 506 (confidential communications to lawyer privilege), 510 (confidential communications to health care provider privileged), 511 (confidential communications to clergyman privileged).
Thus, to encourage frankness and honesty in these selected contexts, the Legislature has provided that a privileged declarant may "silence" a party to a confidential communication by invoking the privilege to prevent evidentiary disclosure of the privileged communication. Since the interest protected by the evidentiary privilege is confidentiality within the relationship and not the integrity of the relationship itself, the evidentiary privilege only protects "confidential" communications made by a person eligible to exercise the privilege in certain prescribed (and often narrowly circumscribed) situations.
A testimonial privilege, on the other hand, is designed not to protect communications per se, but rather to protect particular relationships from judicial scrutiny. It is not the content or nature of the statements to be placed into evidence which is significant; rather, the important point is that forcing one party in a personal relationship to testify against another party in that relationship may undermine, or even destroy, that relationship.
The spousal testimonial privilege of LSA-C.E. Art. 505 represents a Legislative determination that the marital relationship is one which should be protected from such a risk. The spousal witness privilege is intended to preclude just the sort of State intervention into the marriage that this Court now sanctions, a "second-guessing" of the motives and relationship of husband and wife. In *171 effect, the statute operates to prevent the State from using one spouse, against his or her will, as a weapon against the other spouse.
When the "domestic violence" exception was included as an exception to the spousal evidentiary privilege, the Legislature made a conscious choice not to protect the affected communications despite their "confidential" nature. See LSA-C.E. 504(C)(1). This exception is attributable to the injustice that would occur if a defendant spouse, as possessor of the evidentiary privilege, could invoke the privilege to prevent relevant confidential conversations between the spouses from being admitted into evidence.[2] In addition, an exception to the evidentiary privilege was warranted by the fact that the evidentiary privilege, unlike the testimonial privilege, would persist after termination of the marriage. Thus, without such an exception an allegedly abused spouse could seek and obtain a divorce from the abuser, yet still be unable to relate to a jury relevant "confidential" statements of the abusing spouse made during the marriage.
The Legislature decided not to write into law a similar exception for the testimonial privilege of LSA-C.E. 505. In doing so, the Legislature recognized that the testimonial privilege could be waived by the abused spouse, who was free to testify if she wished to do so.[3] Weighing the policy goal of the privilege, preservation of the sanctity of the marital relationship, against the prospect of circumstances such as those presented by just this case, i.e. the concerns underlying the exception to the spousal evidentiary privilege in LSA-C.E. Art. 504(C)(1), the Legislature chose not to extend the LSA-C.E. 504(C)(1) exception to LSA-C.E. 505.
The Legislature clearly could have carved out such an exception had they wished to do so; the express language of LSA-C.E. Art. 504(C)(1) indicates the Legislature's familiarity with the process of writing just such an exception. They chose not to. In my opinion, the majority does not give the Legislature's decision the respect or the deference it is due.
The majority has focused upon the "possibility" that the wife in this case may be threatened or otherwise "intimidated," which is of course a crime unto itself. See LSA-R.S. 14:129.1 ("Intimidating, impeding or injuring witnesses"). Although I sympathize with the sentiment, and concede that the alleged facts in this case are egregious, I do not think that the incantation "domestic violence" should operate haphazardly to vary the solemn expression of the legislative will. This ruling will not allow an abused (in this case) wife to testify against her abusive spouse; she can do that now, since the testimonial privilege is hers to waive. Rather, this decision merely opens the way for courts to compel such testimony regardless of the wishes of the witness spouse.
It is incontrovertible that this result is contrary to the policies animating the spousal testimonial privilege. In the instant case, the victim has made a decision to assert the privilege and refuse to testify against her husband. The policies behind the spousal testimonial privilege counsel that this decision is hers to make, and it is not for the courts to intervene and review that decision, *172 however unwise it may be, for any perceived "abuse of discretion."
As the majority observes, the problem of domestic violence is a matter of deservedly serious concern in this country and in this state. However, I dutifully suggest that the proper forum for addressing this matter is a legislative, and not a judicial, one.
For these reasons, I concur in the majority opinion insofar as it rejects the wholesale adoption of a "victim spouse exception" to the spousal testimonial privilege, but as to the majority's decision to reverse and remand this case and the reasons therefore, I respectfully dissent.
NOTES
[*] Justice Marcus not on panel. Rule IV, Part 2, § 3. Judge Melvin A. Shortess, Court of Appeal, First Circuit, sitting in place of Justice James L. Dennis.
[1] LSA-C.E. art. 505 provides:

In a criminal case or in commitment or interdiction proceedings, a witness spouse has a privilege not to testify against the other spouse. This privilege terminates upon the annulment of the marriage, legal separation, or divorce of the spouses.
[2] LSA-R.S. 14:34, Aggravated battery, provides as follows:

Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more then ten years, or both.
[3] Since the district court did not rule on this motion, we will not address it. The state can seek a ruling from the trial court on this motion and a determination if the victim's prior statements are admissible under any of the exceptions to the hearsay rule. LSA-C.E. art. 801, et. seq.
[4] La.Acts of 1805 provided that the rules of evidence in criminal cases "shall be except as is by this act provided for, according to the said common law." Galloway, infra, at 429, fn. 16.
[5] Section 1 of Act 41 of 1904 provided:

Be it enacted by the General Assembly of the State of Louisiana. That the competent witness in all criminal matters, shall be a person of proper understanding; provided that the husband cannot be a witness for or against his wife, nor the wife for or against her husband, except in such cases as is now provided by law and except in cases where either the husband or wife is on trial for bigamy.
[6] The confidential communication privilege in Act 157 of 1916 provided that "[p]rivate conversations between husband and wife shall be privileged."
[7] LSA-R.S. 15:461 provided:

The competent witness in any criminal proceeding, in a court or before a person having authority to receive evidence, shall be a person of proper understanding, but;
(1) Private conversations between husband and wife shall be privileged.
(2) Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other.
(3) In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness.
[8] LSA-C.E. art. 102 reads in full as follows:

These articles shall be construed to secure fairness and efficiency in administration of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.
[9] The state cites California and Alaska decisions. However, in California the statute allows for exceptions for physical abuse of the other spouse whether before or after marriage. California Evidence Code § 970. In Alaska the courts are allowed to relax the rules when justice requires. Alaska R.Evid. 505, Alaska R.Crim.P 53.

Mississippi is the only jurisdiction cited by the state where the courts have created an exception when the crime is against the testifying spouse. In Stubbs v. State, 441 So.2d 1386 (Miss. 1983), the injured husband was unwilling to testify for the prosecution against his estranged wife. He relied on Miss.Code § 13-1-5, providing that either may introduce the other's testimony in any proceeding between them but that in all other instances where one is a party litigant, the other is incompetent to testify. The trial court overruled his objection and ordered him to testify. On appeal, the Mississippi Supreme Court looked to its own 1882 decision allowing an injured spouse to testify against the other, and affirmed, holding that such testimony is viewed as emanating from a member of the public rather than a spouse. Id., 441 So.2d at 1388. The court approved the order to compel, as the crime was against public order, an affront to the dignity of the state and held that such spousal "competency..." cannot be waived or affected by a witness's desires or fears, as those are overborne "by the paramount interest of the state in preserving its criminal laws." Id.
For a state law similar to Louisiana's, see Code of Alabama, § 12-21-227 and Arnold v. State, 353 So.2d 527 (Ala.1977) and Holyfield v. State, 365 So.2d 108 (Ala.Cr.App.1978), writ denied, 365 So.2d 112 (Ala.1978).
[1] Regarding waiver of a privilege, the legislature has drawn a clear red line with LSA-C.E. art. 502(A). Waiver is tied to (non-privileged) disclosure by the holder of the privilege. After the spouse makes a public disclosure, that spouse has no testimonial privilege as to the matter disclosed. The loss of the privilege cannot be undone, regardless of that spouse's change of heart, retraction, remorse, etc.
[2] The following illustration exemplifies the absurd result which occurs by considering the marital union in isolation, without considering prior public disclosure: A wife observes her husband committing a crime; thereafter, the wife makes full and complete public disclosure of her observation; criminal prosecution is [or is not] instituted against the husband; after becoming aware of the wife's waiver of her spousal privilege, the husband and wife decide to divorce; they divorce thereby terminating the spousal privilege as to that marriage; the husband and wife then remarry in order for the wife to acquire a new spousal privilege over the previously disclosed criminal act of the husband.
[1] "The tenor of the provision makes clear that this privilege belongs to and may be waived by the witness spouse." Official Comment, LSA-C.E. Art. 505.
[2] Although non-hearsay as an admission of a party-opponent, the privilege prevents the victim spouse from disclosing the content of any privileged communications on the witness stand.
[3] Justice Ortique's concurring/dissenting opinion posits that the spousal testimonial privilege was waived by the wife's earlier revelations and complaints about the beating incident. These communications are no longer confidential and therefore no longer protected by the evidentiary privilege; however, this does not mean that the testimonial privilege is abrogated. A testimonial privilege is designed to protect a relationship, not a particular communication, and therefore persists for the duration of the relationship sought to be protected regardless of anything either party to the relationship may have said prior to the formation of that relationship. In much the same way, the timing of the alleged offense, e.g. before the marriage, is also immaterial; it is the married status of the parties at the time of the testimony sought to be compelled which necessitates the application of the privilege. Thus, the prior communications of the wife are just that, prior communications, hearsay which may be admitted into evidence if an exception to the hearsay rule is applicable, but which do not effect in any way a waiver of the privilege of "a witness spouse ... not to testify against the other spouse." LSA-C.E. Art. 505.